IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOHN TUCKER, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| V. ) | Civil No. **05-440-GPM** |
| ) | |
| **WALGREEN CO.,** ) | |
| ) | |
| Defendant. ) | |

## ORDER

**PROUD, Magistrate Judge:**

The above-captioned proposed class action **(Doc. 11)** alleges defendant Walgreen Company ("Walgreens") has a pattern and practice of race discrimination. Plaintiffs propose that the class include all former, current, and future black[1] management employees and applicants for management nationwide, as well as current and former black pharmacists. This case is still in the pre-certification discovery phase. Before the Court is "Plaintiffs' Motion to Compel Responses to Plaintiffs' First Request for Production of Documents" **(Doc. 37)**, as well as defendant Walgreen Company's response **(Doc. 38)**. The motion and response make clear that certain broad issues are in dispute which go to the appropriate scope of discovery: (1) geographic and/or corporate parameters; (2) relevant time period; and (3) type of job applicants. In addition, issues of privilege and the appropriateness of a protective order are raised. Rather than address each request for production, the Court will follow the parties' lead and address the broader

---

[1] Plaintiffs use the term "black" in the First Amended Complaint, while defendant uses the term "African-American." The Court has elected to use the term "black," so that there is uniformity with the First Amended Complaint.

1

issues.

In accordance with Federal Rule of Civil Procedure 23, the scheduling and discovery order dictates:

> During the initial pre-certification discovery phase, the parties should be guided by the threshold requirements for class certification-- numerosity, commonality, typicality, and adequacy of representation. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citing *Amchem Products, Inc. v. Windsor*, 117 S.Ct. 2231, 2245 (1997). The Court recognizes that there will be some overlap between issues relevant to the issue of class and the specific claims asserted in the complaint.

**(Doc. 33-1, p. 2).** Of course, the scope of discovery is generally limited to any matter relevant to the subject matter of the pending action, so long as the sought after information is not privileged, even if inadmissible at trial, if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. **Fed.R.Civ.P. 26(b)(1);** *see also Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978).** At the heart of the parties' dispute is the fact that they construe the First Amended Complaint **(Doc. 11)** differently.

<u>**The First Amended Complaint**</u>

The First Amended Complaint describes a "a continuing violation of federal law on behalf of all former, current, and future black management employees and applicants for management nationwide, as well as current and former black pharmacists." **(Doc. 11, p. 1).** A "pattern and practice of race discrimination in hiring, promotion and store assignment of black employees" is alleged. **(Doc. 11, p. 2).** All of the named plaintiffs are or were employed by Walgreens. **(Doc. 11, pp. 3-5 and 12).** However, plaintiffs elaborate that "applicants" is intended to include both incumbent employees and potential new-hires. **(Doc. 11, p. 11).** Plaintiffs contend there is discrimination at the very first step in the "Retail Career Path," the

2

selection of assistant store managers and management trainee positions. **(Doc. 11, pp. 6-7).** Plaintiffs also contend there is discrimination in the promotion process within the "Retail Career Path," "Pharmacy Career Path" and non-retail management. **(Doc. 11, pp. 6-7).** Plaintiffs assert that discrimination is evinced by statistics, and is the result of "steering" blacks in the retail path into "black/low income" stores[2], and "steering black pharmacists into "black/low income" stores and "low volume" stores, which has a detrimental effect on these employees' career paths, bonuses and working conditions. **(Doc. 11, pp. 7-11).** Plaintiffs make much of Walgreens' "peer groups"– stores grouped by racial/ethnic and income demographics.

### The Incumbent Applicant Pool v. The Outside Applicant Pool

One of the prerequisites for class certification is that the representative parties– the named plaintiffs– will fairly and adequately protect the interest of the class. **Fed.R.Civ.P. 23(a)(4).**

> A class may not satisfy the requirements of Rule 23(a)(4) if the class representative does not "possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citing *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).

*Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, **309 F.3d 978, 985 (7th Cir. 2002).** This issue must be decided by Chief U.S. District Judge G. Patrick Murphy. However, determining the proper scope of discovery is this Court's prerogative. Therefore, this Court's

---

[2]Walgreens categorizes stores into "peer groups" based on racial/ethnic and income demographics. "Black/low income" is an established peer group. The parties differ on why Walgreens uses peer groups. "Low volume" is not a peer group designation, per se; rather, it refers to a low volume of prescriptions (and low profitability). **(*See* Doc. 11, p. 8; and Doc. 38, fn 1).**

ruling is **not** dispositive of the issue for purpose of class certification.

The First Amended Complaint alleges discrimination affecting two stages of the employment process, hiring and promoting. **(Doc. 11, pp. 1-2 (reference is made to future employees and hiring).** There is great elaboration regarding factors relevant to promotion, but no explanation of the hiring process and how the defendant allegedly discriminated in hiring from outside the company. Plaintiffs no doubt view not being hired for a new job and not being promoted into a new position as the same harm and injury– not getting a particular job. However, the named plaintiffs were all hired by Walgreens, making them members of the incumbent applicant pool for the various management paths, and making them antithetical to those who were not hired. In *General Telephone Co. v. Falcon*, 457 U.S. 147, 156-159 (1982), the United States Supreme Court recognized the obvious dichotomy between those who were hired and those who were not promoted– they suffered different injuries. Therefore, the scope of discovery will be limited to incumbent employees.

### Geographic Scope

The First Amended Complaint refers to a "nationwide" pattern and practice, meaning the 44 states in which Walgreens has stores. Noting that the named plaintiffs work in only eight of Walgreens' over 200 districts, defendant would limit the geographic scope of discovery to all districts, nationwide, where there is one or more "black/low income" store.[3] Walgreens also

---

[3]Walgreens asserts the resulting data would pertain to more than 50% of its stores in approximately 100 districts, covering more than 70% of black managers and pharmacists. **(Doc. 38, p. 3).**

argues that plaintiffs' "segregation"/"steering" theory limits discovery to the stores within the black/low income peer group.

The First Amended Complaint offers five general examples of how the defendant allegedly discriminates against black employees in management, staff pharmacists and blacks seeking entry into the retail career path. **(Doc. 11, p. 6).** "Steering and segregation" is one of the five. Plaintiffs contend the defendant steers them into black/low income stores and then perpetuates their segregation there. **(Doc. 11, pp. 6 and 10).** It is alleged that pharmacists are steered into low volume stores, in addition to black/low income stores. **(Doc. 11, pp. 6, 8 and 11).** Two more of the five examples of how defendant allegedly discriminates are purportedly illustrated by the disproportionate number of whites who are selected for district manager, and who are selected for pharmacy manager and pharmacy supervisor. **(Doc. 11, p. 7).** Therefore, more than just black/low income stores or districts with at least one black/low income store are relevant. Defendant has ignored the low volume stores relevant to the pharmacists, and plaintiffs' broader allegations that encompass all stores and districts. Nationwide discovery is necessary. The parties will surely have competing statistics and will continue to differ over what the applicable feeder pools are, but it is precisely these issues that are relevant to class certification. The requirements of commonality and typicality will require the Court to determine whether the claims of the named plaintiffs will support class claims, which may or may not support a nationwide class. This is an instance where "class" discovery unavoidably overlaps with "merits" discovery.

Defendant has offered no persuasive reasons to limit the scope of discovery to a geographic subpart that does not reflect all claims, and that would surely invite a challenge to the

sufficiency of plaintiffs' statistical evidence in support of class certification. Defendant acknowledges the existence of multiple databases responsive to plaintiffs' discovery requests, which "would occupy at least ten data disks, the equivalent of hundreds of thousands of pages." **(Doc. 38, p. 8).** Federal Rule of Civil Procedure 34(a) clearly contemplates the discovery of data compilations, although the Court has power to assess and ameliorate the burden placed on the respondent. **Fed.R.Civ.P. 34, Advisory Committee Notes, 1970 Amendment.** Defendant has not indicated that turning over ten data discs is onerous. Defendant has also not indicated that the amount of irrelevant, private or protected information that might be encompassed in the databases predominates and cannot be excluded. The Court suspects those objections will be raised in a separate motion for protective order.

## The Relevant Time Period

Plaintiffs would have the relevant time period run from January 1, 1998, to the present. Defendant would not begin the time period until June 20, 2001– presumably because of the generally applicable four-year statute of limitations. *See* **28 U.S.C. 1658; and** *Dandy v. United Parcel Service, Inc.*, **388 F.3d 263, 269 (7th Cir. 2004).** However, the "continuing violation" doctrine can possibly expand the time frame if a pattern and practice of discrimination extends further back in time, provided a contributing act takes place within the four-year statutory period. *Dandy*, **388 F.3d at 370.**

A review of the First Amended Complaint suggests that the relevant time period could span much earlier than even 1998. For example, plaintiff Tucker was hired in 1986 and first promoted in 1987. **(Doc. 11, p. 15).** In any event, a pattern and practice has been alleged, which could bring the continuing violation doctrine into play. **(*See* Doc. 11. Pp. 15-35 (facts**

**regarding each plaintiff, which often span back past the June 20, 2001, statute of limitations demarcation)).** There is insufficient information before the Court for further analysis of the applicability of the doctrine. Nevertheless, not allowing plaintiffs to obtain discovery from January 1, 1998, onward would inhibit Chief Judge Murphy from properly assessing the applicability of the continuing violation doctrine and the scope of the potential class. Therefore, the relevant time period for discovery is from January 1, 1998, to the present.

## Assertions of Privilege

Federal Rule of Civil Procedure 26(b)(5) dictates that a party shall make any claim of privilege "expressly and shall describe the nature of the documents . . . in a manner that, without revealing itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

Virtually every one of defendant's answers to plaintiffs' requests for production includes the caveat that only non-privileged documents will be produced, and defendant vaguely asserts privilege with respect to a smattering of the requests. **(Doc. 37-3 (Plaintiff's Exhibit 2)).** Plaintiff objects that no privilege log has been provided thereby inhibiting their evaluation of the applicability of any privilege(s). Defendant asserts that it is premature to require them to provide a privilege log, and that once the scope of discovery has been decided and the bulk of the discovery materials have been turned over, it would then be appropriate to provide plaintiffs with a privilege log. Defendant has most recently provided plaintiff with a privilege log.

Defendant's boilerplate language about only producing non-privileged documents is obviously contrary to Rule 26(b)(5) and only serves to create confusion. Insofar as defendant contends its efforts to gather responsive materials were ongoing, Rule 26(e) imposes an ongoing

duty to supplement disclosures and discovery responses. Therefore, defendant should have properly asserted privilege protection as to the documents it had gathered at the time its responses were due, and later supplemented its responses. No sanction will be assessed against defendant.

Defendant did not provide plaintiffs with its privilege log until after plaintiffs filed their motion; therefore, plaintiffs have not had an opportunity to assess the privilege log. Until a motion challenging a particular assertion of privilege is filed, there is no issue properly before the Court.

### Appropriateness of a Protective Order and Related Issues

Walgreens wants a protective order entered pertaining to documents containing confidential employee information, company trade secrets and other non-public company information concerning the way Walgreens operates and competes in the market. Plaintiffs want to limit protection to specified documents. Walgreens also is specifically concerned with turning over "peer group" documents, which Walgreens asserts are used solely for marketing purposes, not employment decisions. In addition, Walgreens is balking at turning over all internal and external complaints or charges by employees alleging discrimination of the basis of race, whether the complaint alleges harassment, hostile environment and/or retaliation.

Defendant has not filed a motion for protective order, so that issue is not properly before the Court. ***See generally* Local Rule 7.1(a).** In anticipation of such a motion the Court directs the parties' attention to Federal Rule of Civil Procedure 26(c), the dictates of *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943 (7th Cir. 1999), and *Union Oil Company of California v. Leavell*, , 220 F.3d 562 (7th Cir. 2000). The Court recognizes the

confidential nature of much of the information typically found in personnel files and the desirability of keeping a variety of employee information confidential, particularly that of non-parties. Nevertheless, the Court of Appeals for the Seventh Circuit has observed that "the contents of [employee personnel files] are by no means uniform. Some information contained in personnel files may be completely innocuous while other information could be of the most personal and sensitive nature." *National Labor Relations Board v. Pfizer*, **763 F.2d 887, 891 (7th Cir. 1985).** Utilizing a similar rationale, in *Union Oil Company of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000), the Court of Appeals stated:

> Many a litigant would prefer that the subject of the case–how much it agreed to pay for a construction pipeline, how many tons of coal its plant uses per day, and so on–be kept from the curious (including business rivals and customers), but the tradition that litigation is open to the public is of very long standing. People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.

**220 F.3d at 567-568 (internal citations omitted).** The parties should be guided by Rule 26(c) and the aforementioned cases when drafting a protective order.

Insofar as Walgreens asserts its "peer groups" are not used to make employment decisions, that is a question that may very well have to be resolved at trial. Plaintiffs have proposed limiting their request for peer group materials to documents that describe how, by whom, and for what purpose Walgreens uses information regarding peer groups, or other information regarding the demographics of its customers or the neighborhoods in which its stores are located. The newly limited request appears aimed at the key question regarding the significance of the peer groups; as limited, the Court finds the request within the bounds of relevance for the class certification phase of discovery.

Plaintiff seeks internal and external complaints of race discrimination, harassment, hostile environment, and retaliation.  Defendant desires to limit production to complaints related to promotion, training, assignment and compensation.  Although the First Amended Complaint does contain anecdotes of general racial harassment, the focus of the action is on discrimination in promotions.  Keeping in mind that this is **only** the class certification discovery phase, the limitations proposed by defendant are consistent with the issues raised in the First Amended Complaint, which is not to say that the scope of "merits" discovery will not be broadened.

**IT IS THEREFORE ORDERED** that "Plaintiffs' Motion to Compel Responses to Plaintiffs' First Request for Production of Documents" **(Doc. 37)** is **GRANTED IN PART AND DENIED IN PART**, as detailed above.

**IT IS FURTHER ORDERED** that the parties shall have until **December 10, 2005**, to jointly submit a proposed protective order or, if no agreement can be reached, defendant should file a motion for protective order, to which plaintiffs would file a response and competing proposed protective order.  If no action is taken by the parties, on or before **December 13, 2005**, defendant Walgreens shall produce requested documents in accordance with the the rulings made in this order.

**IT IS SO ORDERED.**

**DATED: November 22, 2005**

                                                      **s/ Clifford J. Proud**
                                                      **CLIFFORD J. PROUD**
                                                      **U. S. MAGISTRATE JUDGE**