UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| JOHN TUCKER, ANGELA MILLER, | ) | |
| JOVAN HANEY, LEON BRADLEY, ARIEN | ) | |
| JACKSON, WILLIAM STRICKLAND, | ) | |
| OSCAR GREEN, MIKE JACKSON, KEVIN | ) | |
| RIDDLE, AVERY ANDERSON, MALICA | ) | |
| PAGE, TRACI DANSBERRY, CARLOS | ) | CASE NO. 05-CV-440-GPM |
| ZIMMERMAN, CHRIS DARGIN, | ) | |
| KIMBERLY WAFFORD, on behalf of | ) | |
| themselves and others similarly situated, | ) | |
| | ) | Chief Judge G. Patrick Murphy |
| Plaintiffs, | ) | Magistrate Clifford J. Proud |
| v. | ) | |
| | ) | |
| WALGREEN COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Keith C. Hult
Allan G. King
John A. Ybarra
Shanthi V. Gaur
LITTLER MENDELSON, P.C.
200 N. LaSalle Street. Suite 2900
Chicago, Illinois 60601
Telephone: (312) 372-5520
Facsimile: (312) 372-7880
*Lead Counsel*

Thomas Peters
Curt R. Picou
GUNDLACH LEE EGGMANN
   BOYLE & ROESSLER
5000 W. Main St.
P.O. Box 23560
Belleville, Illinois 62223-0560
Phone: (618) 277-9000
Facsimile: (618) 277-4594
*Local Counsel*

Dated: May 5, 2006

## I.    INTRODUCTION

### A.    <u>Summary of Argument</u>

In what is already an expansive, nationwide putative class action that has been proceeding for nearly a year, Plaintiffs belatedly seek to amend their allegations to replace one failed class representative with another flawed representative.  Through this process, Plaintiffs hope to expand the class to include potentially thousands of new class members (external applicants) in an effort to secure discovery into matters previously foreclosed by the Court. Plaintiffs' amendment is made all the more egregious by the fact that Plaintiffs' proposed new representative -- Kimberly Wafford – is not even a member of the external applicant class she seeks to represent!   As described herein, Wafford never actually submitted an external application for a Management Trainee position, and thus, she has no standing to represent a class comprised of external applicants.  *Harriston v. Chicago Tribune Co.*, 992 F.3d 697,703-04 (7th Cir. 1993).

Also as part of their proposed amendment, Plaintiffs seek to add a class-wide disparate impact claim under Title VII of the Civil Rights Act of 1964.  This claim, too, inevitably must be dismissed because none of the Plaintiffs raised this allegation in their EEOC charges of discrimination.  As such, they have failed to exhaust their administrative remedies and cannot include such claims as part of their lawsuit.  *Diersen v. Walker*, No. 00-C-2437, 2003 U.S. Dist. LEXIS 19794, at *20 (N.D. Ill. November 3, 2003).

Ignoring these fatal flaws, Plaintiffs attempt to downplay the significance of their Second Amended Complaint ("SAC") and the disruptions it will cause in this litigation.  However, as described in more detail herein, Plaintiffs' proposed amendments are not only futile and legally deficient, but also will fundamentally alter the nature of this case and add great cost to already

expensive litigation.  This case was originally filed in June 2005.  Since that time, the parties have engaged in an extensive discovery process, and Walgreens has produced hundreds of thousands of documents and multiple computer databases containing nationwide data regarding management employees.  Plaintiffs' proposed amendment, which could potentially bring decisions regarding tens of thousands of applicants into this case as well, will necessitate the production of even more documents and data.  The dramatic and sweeping changes proposed by Plaintiffs at this late juncture -- as the parties ready the case for mediation -- will greatly prejudice Walgreens and substantially delay the resolution of this case.  Thus, Plaintiffs' Motion should be denied.

### B.   Background and Procedural History

As this Court may recall, Walgreens store management is hierarchical in nature. Management Trainees (MGTs) are most numerous, and are at the bottom of the hierarchy.  Next in line are the Executive Assistants (EXAs), and at the top of the pyramid are the Store Managers, who are fewest in number because there is only one per store.

Plaintiffs initially pled this case with Malica Page as the only plaintiff who was denied a position as an MGT.  As this Court noted, Page, like all of the other fourteen named plaintiffs, was an incumbent employee when she allegedly applied to become an MGT.  (*See* Doc. 40: Nov. 22, 2005 Order).  Based upon Page's claims, this Court permitted Plaintiffs discovery with respect to other *internal* candidates who applied to the MGT program.  However, Plaintiffs also had sought discovery regarding an equally, if not more, numerous group of external applicants who were not Walgreens' employees when they applied to become an MGT.  Because Page was a member of the incumbent applicant pool, however, the Court found that she, like all of the other named plaintiffs, was "antithetical" to those external candidates who were not hired.  (*See*

Doc. 40: Nov. 22, 2005 Order.)  Therefore, the Court limited the scope of discovery to incumbent employees only.  *Id*.

As discovery proceeded, and Page was deposed, it became clear that despite her contention that she was representative of a much larger group of rejected internal applicants, Page lacked even a viable claim of her own.  Page testified that she had no evidence that she was the victim of discrimination, let alone that anyone else had suffered such a fate.  (*See* Exhibit 1, Page Dep. 144-48).  In light of this testimony, Plaintiffs' counsel recognized their duty to cease prosecuting Page's frivolous claims, and subsequently agreed to dismiss Page from this lawsuit.  Page's dismissal, however, leaves a gaping hole in Plaintiffs' lawsuit.  Not only have they lost their lone representative of the largest group of putative class members, but any hope of extending this suit to external applicants has vanished as well, because higher-level managers, even more so than MGTs, are selected primarily from among incumbents.

Enter Kimberly Wafford, whose claims Plaintiffs now seek to add to this lawsuit.  Wafford, like Page, also failed to gain entry to the MGT program.  However, unlike Page, Wafford alleges that she applied to be an MGT both as an external and internal candidate -- *i.e.*, both *before* and after she became a Walgreens' employee.  Thus, Plaintiffs now seek to replace Page with Wafford, who ostensibly brings with her the promise of a different and even larger putative class -- non-Walgreens' employees -- and the right to the discovery of external applicants Plaintiffs previously have been denied.  The addition of Wafford is also a thinly-veiled attempt to revive the improper and overbroad discovery requests that were served months ago, and which were denied by this Court's November 22, 2005 Order (Doc. 40 at 4).  As explained, those requests sought discovery relating to both internal and external applicants for the MGT position, despite the fact that there was no class representative for the latter group.  Since they have now

found Wafford, a Plaintiff who supposedly fits the bill for their discovery, Plaintiffs are likely to use the SAC to re-issue the same requests, despite the fact that Wafford does not actually fit the bill, as she never applied for the MGT position as an external applicant.  (*See* Section II.B.1. *infra*).

If Wafford's claims seem tailored to Plaintiffs' needs, that surely is by design.  Wafford did not file a charge of discrimination with the EEOC until well after Page's deposition, when it became clear that Plaintiffs had just lost the representative of the largest segment of their putative class.  (*See* Exhibit 2:  Wafford Charge).  Similarly, Wafford's allegation that she was an external applicant post-dates this Court's November 2005 Order limiting discovery to incumbent employees.  In fact, as explained below, the facts do not support Wafford's external application theory -- Wafford's own employment application and pre-employment interview clearly illustrate that she did not apply for an MGT position before she became a Walgreens' employee.  (*See* Exhibit 3:  Wafford 8/19/04 Application).  Thus, in reality, Wafford is as ill-suited to the role in which she has been cast as Page was.

Although Plaintiffs may protest that these are disputed facts that should not preclude their proposed amendment, the issue is much larger than the validity of Wafford's claims.  Rather, the critical question is whether this Court will permit Plaintiffs first to cloak themselves, on their own say-so, in the mantle of class representatives victimized by an alleged widespread practice of discrimination; then, when it is shown, after hugely burdensome discovery, that the "emperor has no clothes," will the Court allow them to find another "emperor," who claims to represent an even larger empire, and who inevitably will demand even more burdensome discovery before ultimately conceding that her claims, too, are threadbare.

Walgreens respectfully suggests that Wafford's true role in this litigation easily is discerned.  Wafford should be permitted to join this case, but the resulting discovery should be limited solely to facts concerning her individual claims.  If she has any legitimate claims to vindicate, she may do so in this forum.  However, if she is merely intended to function as a mannequin to be dressed in Page's hand-me-downs, then Plaintiffs will balk at this suggestion because, to them, Wafford's personal claims truly are beside the point.

## II.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 15(a), leave to amend should not be given where bad faith, undue prejudice, or undue delay are present.  *Campania Mgmt Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-849 (7th Cir. 2002); *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993).  In addition, a court may refuse to grant leave to amend where the proposed amendment is futile.  *Campania Mgmt Co*, 290 F.3d at 849; *Ferguson*, 11. F.3d at 706.  The determination to deny leave to amend is within the sound discretion of the court.  *Campania Mgmt Co*, 290 F.3d at 849; *Ferguson*, 11. F.3d at 706.

## III.    AMENDMENT OF PLAINTIFFS' COMPLAINT IS IMPROPER

### A.     <u>Summary of Proposed Amendments</u>

Plaintiffs' proposed amendments are not as simple and uncontroversial as Plaintiff's Motion suggests.  While some of the proposed changes are minor and acceptable, several key amendments are futile, made in bad faith, and are both extremely belated and prejudicial.  In particular, Plaintiffs' addition of Kimberly Wafford as an external applicant is not only unsupported by the facts but also will greatly change the nature of this case.  Consistent with this Court's November 22, 2005 Order, discovery thus far has not focused on external applicants.  Wafford's addition, if allowed, will thus dramatically change the nature of the class to include

potentially thousands of new class members who were previously excluded.   Likewise,

Plaintiffs' proposed addition of a Title VII disparate impact claim is futile, as no Plaintiff has

raised such a claim in his/her EEOC Charge and no Plaintiff has identified any specific racially

neutral practice that has an *unintentional* disparate impact upon African Americans.[1]

---

[1] The proposed amendments specifically include:  changing all references from "black" to African American (SAC ¶¶1-2, 8-20, 23); adding disparate treatment and disparate impact claims under Title VII (SAC ¶¶2, 4, 7-20); removing compensatory damages claims for Plaintiffs and for class.  Plaintiffs now seek past and future lost wages and related employee benefits (e.g., SAC ¶ 65); adding a request for a declaration that Walgreens' conduct violates Title VII and Section 1981, as well as an injunction ending alleged discriminatory practices and providing prospective relief; adding an allegation that all Plaintiffs except Kimberly Wafford have requested, and are entitled to, Right to Sue Notices under Title VII (SAC ¶¶ 5, 8-20); adding allegation that, as to Tucker, Bradley and A. Jackson, the EEOC has found against Walgreens on the class allegations of the charge; adding new named Plaintiff and proposed class representative Kimberly Wafford, who allegedly applied for an MGT position as an external candidate, was rejected and has been employed by Walgreens in non-management positions during which time she again applied for MGT and was rejected (SAC ¶¶ 21, 123-135); removing Malica Page as a class representative and as Plaintiff; adding allegation that Walgreens discriminates against African-Americans seeking promotion to district management (as well as corporate) positions; that African-American management employees and pharmacists are segregated and steered to African-American and/or low income stores; and that the segregation discriminates against African-Americans in terms of training opportunities (as well as bonuses, working conditions and promotions) (SAC ¶¶ 23 and 28); adding claim that Walgreens' managers have "considerable discretion" in making promotion and store assignment decisions, and that Walgreens provides no monitoring or adequate training on anti-discrimination laws, diversity or human resources processes (SAC ¶ 24); adding claim that Walgreens discriminates in selection of employees from among both external applicants and internal candidates (SAC ¶ 25); adding claim that Walgreens' managers have "broad discretion" in making promotion decisions in the Pharmacy Career Path, with little or no training or guidelines (SAC ¶ 27); expanding class to all African-American employees in the Retail and Pharmacy Career Paths from 6/1/01 – trial, as well as any African-Americans who have applied for employment or been deterred from applying, and who have been, or may be, adversely affected by alleged discrimination in hiring, store assignment, compensation, training, promotion and terms and conditions of employment (SAC ¶ 32); adding allegation that Walgreens intentionally has allowed its managers to make promotion, training, compensation, and store assignment decisions in the Retail and Pharmacy Career Path in a discriminatory manner and based on highly subjective criteria and without specific training in EEO practices, resulting in an adverse impact on African American employees in the Retail and Pharmacy Career Path (SAC ¶ 139); adding disparate treatment claim based on (1) denial of promotions; (2) store assignments; (3) denial of "equal compensation opportunities"; (4) denial of equal training opportunities; (5) denial of "equal hiring opportunities" and (6) denial of equal terms and conditions of employment (SAC ¶ 145); and adding request for equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief (SAC ¶ 146); adding disparate impact claim with respect to allegedly disparate racial impact of policies related to promotions/transfers, store assignments, compensation, and training opportunities (SAC ¶¶ 148-152).

**B.**     **Kimberly Wafford's Claims Are Futile and Without Foundation**

**1.     Kimberly Wafford Never Applied For The Position Of MGT As An External Candidate And Was Not Eligible For That Position Because She Indicated That She Wanted To Be A Part-Time Employee**

Kimberly Wafford cannot serve as class representative for external candidates for MGT positions because she never applied for that position as an external candidate.  Moreover, Wafford confirmed both during her interview and on her application that she was seeking only part-time employment; as such, she was not eligible for an MGT position when she applied for employment as an external candidate within District 135.  Thus, it would be futile to amend the Complaint to permit Wafford to represent a putative class of external candidates, because she is not a member of that class.  *See Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (A class representative must "possess the same interest and suffer the same injury as the class members.") (citing *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citing *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974)).

Specifically, in August 2004, Wafford completed an on-line job application with Walgreens for employment in Indianapolis, Indiana.  Wafford did not indicate anywhere on the application that she sought an MGT position.[2]  To the contrary, Wafford selected Pharmacy Technician as her "first choice" for a position with the Company.  (*See* Exhibit 3).  She also stated on the application that she was interested in positions as a service clerk, or positions in the photo department, cosmetics department and pharmacy.  (*Id.*).

Additionally, Wafford's application indicated that she was seeking part-time employment.  However, MGTs are in training to eventually become store managers, and as such,

---

[2] *See Sanders v. Norfolk Southern Railway Co.*, 39 Fed. Appx. 414, 416 (7th Cir. 2002) (In a failure to hire context, among other things, complainant must show that she was qualified for an open position for which *she applied*) (emphasis supplied).

they must be available full-time to manage the store and its employees.  (*See* Exhibit 4: Management Trainee Job Description).   Therefore, within District 135, the only part-time management positions available are those which are filled by Business Management Interns ("BMI") (who work a part-time schedule only until the completion of their college courses). Thus, even if Wafford had applied for the MGT Program (which she did not), she was ineligible based on her desire to work part-time.

Jeff Robinson, Store Manager for Store 3045, reviewed Wafford's application and called her in for an interview.  During the interview, Wafford confirmed that she was seeking a part-time position because she was in the process of applying to graduate school.  Consistent with her application and interview, and based on store staffing needs, Robinson hired Wafford as a part-time Photo Technician.

Indeed, with the proposed addition of Wafford, Plaintiffs appear to be trying to "reverse engineer" this litigation by adding another named Plaintiff to fit into their pre-existing premise that Walgreens systemically discriminates against African American applicants for the position of MGT.  However, try as they might, Plaintiffs simply cannot make Wafford fit within this theory.  It is clear that Wafford never applied for an MGT position as an external candidate.  In fact, Wafford was not even eligible for an MGT position as an external candidate because she was looking for part-time work.  Therefore, Plaintiffs' proposed amendment is not only futile but also demonstrates bad faith, and must be dismissed.  *Uhl*, 309 F.3d at 985.

### 2.   Kimberly Wafford's Claims Are Contradicted By The Experiences Of All Of Her Non-Pharmacist Co-Plaintiffs

As explained, Plaintiffs contend that Wafford purportedly can act as the representative for two extensive categories of class members: (1) African American internal candidates who were not promoted into the position of MGT; and (2) African American external candidates who

were not hired into the position of MGT.  (SAC ¶¶ 21, 25, 32, 36, 123-135).  Plaintiffs claim that the experience of this *single* employee, Wafford, is reflective of systemic discrimination in the selection of MGTs.  (*Id.*).

By attempting to add Wafford as a class representative, Plaintiffs are looking to broaden this lawsuit to include an *enormous* number of putative class members, as tens of thousands of hourly employees and an equally large number of outside applicants would be encompassed by the extensive class pled by Plaintiffs.  Thus, Plaintiffs place a great deal of weight on Wafford as a representative, as she is the vehicle through which Plaintiffs seek to expand this case to several times its present size.  However, this reliance on Wafford is misguided.  She is the *only* named plaintiff who did not succeed to the MGT position or beyond, and, as described above, she never applied as an external candidate.  Further, Wafford's claim is belied by the fact that no fewer than 10 of her 13 Co-Plaintiffs, the three exceptions being pharmacists not on the same career path, served as MGTs and several were also subsequently promoted to higher management ranks:

1. William Strickland (SAC ¶ 78) (served as MGT and EXA);
2. Mike Jackson (SAC ¶ 88) (served as MGT and EXA);
3. Kevin Riddle (SAC ¶ 94) (served as MGT);
4. Oscar Green (SAC ¶ 84) (served as MGT, EXA and Store Manager);
5. Angela Miller (SAC ¶ 59) (served as MGT, EXA, and Store Manager);
6. Jovan Haney (SAC ¶ 66) (served as MGT);
7. Leon Bradley (SAC ¶ 70) (served as MGT, EXA and Store Manager);
8. Arien Jackson (SAC ¶ 74) (served as MGT and EXA)
9. Avery Anderson (SAC ¶ 100) (served as MGT, EXA, and Store Manager); and
10. John Tucker (SAC ¶ 53) (served as MGT, EXA, and Store Manager).

Thus, <u>each</u> of Wafford's co-plaintiffs (excluding the pharmacists) either was hired into, or promoted into, that same entry-level position (MGT) or a higher position -- yet Wafford alleges that a nationwide policy of pervasive race discrimination prevented her from achieving that same

goal.   This experience clearly contradicts that of her co-plaintiffs.   Indeed, under these circumstances, Plaintiffs' continued pursuit of the claims that internal and external applicants for the MGT position were discriminated against demonstrates bad faith because the experience of *every* other relevant named Co-Plaintiff negates the allegations of systemic discrimination in the hiring/selection of individuals for the MGT position.   Because Wafford's claim to be a class representative is as fatuous as her predecessor's (Malica Page), the amendment of Plaintiffs' Complaint to name her as a class representative is futile and should not be permitted.

### 3.   Kimberly Wafford Has Not Satisfied The Prerequisites For Filing Suit Under Title VII

Wafford has never received any "Dismissal and Notice of Rights" from the EEOC which would allow her to act as a named class representative in this litigation.   Wafford has very specific claims and facts that are not shared by any named Co-Plaintiff, so there is absolutely no EEOC charge for which a Dismissal and Notice of Rights has been issued that covers Wafford's allegations (and the allegations of the potential class members that Plaintiffs intend for Wafford to represent).   In particular, Wafford cannot prosecute a disparate impact claim on behalf of the class she seeks to represent because she has not raised, nor exhausted, this theory on her own behalf with the EEOC.   Because she lacks this prerequisite to bringing a lawsuit under Title VII, Wafford is not an appropriate representative for the applicants/employees that Plaintiffs intend for her to represent.   *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1246 (7th Cir. 1983) (finding that class member who does not meet procedural requirements of Title VII cannot act as class representative).

C.     **Plaintiffs' New Disparate Impact Claim Is Futile Because It Is Beyond The Scope Of Any Of Their EEOC Charges**

None of the Plaintiffs filed an EEOC charge that raised claims of disparate impact in violation of Title VII.  Instead, their allegations are limited to disparate treatment claims.  (*See* Exhibit 5: Plaintiffs' EEOC charges of discrimination).  In such circumstances, courts have routinely held that disparate impact allegations not within the scope of the EEOC charge(s) have not been exhausted and are, thus, not viable.  *Diersen v. Walker*, No. 00-C-2437, 2003 U.S. Dist. LEXIS 19794, at *20 (N.D. Ill. November 3, 2003)

It is well accepted that there must be a reasonable relationship between the allegations in the charge and the claims in the complaint, and it must appear that the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *Diersen*, 2003 U.S. Dist. LEXIS 19794, at *19-20 (citing *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000)).  Claims are "reasonably related" if there is a factual relationship between them.  *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001).  At a minimum, the EEOC charge and the complaint must describe the same conduct and implicate the same individuals.  *Dierson*, 2003 U.S. Dist. LEXIS at *20.  In this regard, the Seventh Circuit and its constituent courts have confirmed that a claim of disparate impact differs substantially from a claim of disparate treatment.  A claim of disparate treatment focuses on the employer's intent with respect to a particular employee's age, race, gender, or disability, whereas a claim of disparate impact focuses on whether an employer's particular employment practice has a disproportionately negative effect on members of the employee's protected class as a whole." *Dierson*, 2003 U.S. Dist. LEXIS at *20 (citing *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996)).

Here, <u>none</u> of the Plaintiffs' EEOC charges contain any allegations that could even arguably be construed as disparate impact claims.  (*See* Exhibit 5).  Nor do any of the charges contain allegations from which one could reasonably expect a disparate impact claim to evolve. Even the charge of Plaintiff John Tucker, which is specifically quoted on page 5 of Plaintiffs' Motion, articulates claims of a pattern and practice of *intentional* disparate *treatment*, rather than disparate *impact* allegations.

To support their theory that their disparate impact claims should be included in this case, Plaintiffs point to alleged *intentional* practices of failing to promote African Americans and/or assigning African Americans to African American/low income stores (*see* Plaintiff's Motion, p. 4-6).  This argument misses the mark.  Plaintiffs apparently fail to recognize that disparate impact claims are entirely different than "pattern and practice" claims, which involve some degree of intentional discrimination.  In contrast, to establish a disparate impact claim, Plaintiffs are required to identify some specific, facially neutral policy that purportedly has an unintentional disparate impact upon African Americans. *See Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 991-95 (U.S. 1988) ("The plaintiff must begin by identifying the specific employment practice that is challenged.").  Nowhere in Plaintiffs' charges of discrimination, Plaintiffs' Motion, nor Plaintiff's proposed SAC do they make any such identification.

Moreover, contrary to Plaintiffs' Motion, Plaintiffs' disparate impact claim could not reasonably have developed from the EEOC's investigation of the charges.  (*See* Exhibit 6: EEOC Letter of Determination).  Rather, as evidenced by the EEOC's letter of determination, the EEOC's findings relate only to Plaintiffs' pattern and practice claim.

For all of these reasons, the proposed amendment of Plaintiffs' Complaint to include disparate impact allegations is futile and improper.

**D.    The Belated Addition Of New Claims And The Significant Expansion Of The Class Will Cause Substantial Undue Prejudice To Walgreens**

Plaintiffs' proposed addition of putative class representative Wafford and the disparate impact claims comes after the case has been pending for almost one year, and after the parties have agreed to submit the case to mediation.  This case was filed in June 2005.  On November 22, 2005, this Court denied Plaintiffs' request for discovery of external applicants because at the time, no named Plaintiff was denied a position with Walgreens as an external candidate.  Now, on the eve of a full-scale mediation, and after Walgreens has produced thousands of documents and multiple computer databases, Plaintiffs seek to cure the deficiencies which this Court recognized in November 2005 by substituting Wafford as a party plaintiff in this case.

Notwithstanding the fact that Wafford, like Page before her, is not a suitable representative, this Court simply cannot countenance Plaintiffs' belated attempt to revive their failed theories.  Although the Court has granted the parties a 90-day extension of pre-certification discovery, Plaintiffs' expert reports are now due on July 28, 2006.  Surely expanding the class to include thousands of external applicants at this late stage will lead to further delay and the need to extend this and other deadlines.  Plaintiffs' proposed amendments will also entail extensive discovery and thereby add great cost to already expensive litigation.  As explained above, there is simply no reason to undertake these costs and delay, given the questionable bases for the proposed amendments.  Indeed, the prejudice that it will cause to Walgreens to expend further costs to expose Wafford as another flawed representative who is pursuing an equally flawed theory of recovery is simply too great.  Thus, Plaintiffs' Motion should be denied.

## III.   CONCLUSION

Several factors should prevent the Court from granting Plaintiffs' Motion for Leave to File Second Amended Complaint: (1) the insufficiency of Kimberly Wafford as the class representative for external applicants for MGT positions; (2) the fact that Wafford's claims, and the claims of all applicants for MGT positions, are unquestionably contradicted by the experiences of every other relevant Co-Plaintiff; (3) the fact that none of the Plaintiffs' EEOC charges contain disparate impact allegations, and which, in fact, contain specific claims of intentional disparate treatment; (4) Plaintiffs' obvious attempt to "reverse engineer" this litigation; (5) the bad faith of Plaintiffs in putting forth the Second Amended Complaint; and (6) the resulting prejudice to Walgreens that will occur if the Plaintiffs' Motion is granted.  The significant changes to the nature of this litigation, the scope of discovery, and the resulting expenses are not warranted by Plaintiffs' unfounded attempt to expand the scope of this litigation with their proposed Second Amended Complaint.  Accordingly, the Court should deny Plaintiffs' Motion for Leave of Court to File Second Amended Complaint.

Respectfully submitted,

**WALGREEN CO.**

_____
**One of the Attorneys for Defendant**

Keith C. Hult
John A. Ybarra
Shanthi V. Gaur
LITTLER MENDELSON, P.C.
200 N. LaSalle Street. Suite 2900
Chicago, Illinois 60601
Telephone: (312) 372-5520
Facsimile: (312) 372-7880

        -and-

Thomas Peters
Curt R. Picou
GUNDLACH LEE EGGMANN BOYLE & ROESSLER
5000 W. Main St.
P.O. Box 23560
Belleville, Illinois 62223-0560
Phone: (618) 277-9000
Facsimile: (618) 277-4594
*Local Counsel*

Date:   May 5, 2006

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a copy of Defendant's Response in Opposition to Plaintiffs' Motion For Leave To File Second Amended Complaint was served upon the following attorneys of record via electronically with the Clerk of the court using the cm/ecf system which sent notification of such filing on May 5, 2006:

Tiffany B. Klosener, tklosener@fwpclaw.com
Amy L. Coopman, acoopman@fwpclaw.com
W. James Foland, jfoland@fwpclaw.com
Tequiero K. Smith, tksmith@fwpclaw.com
Wendee Elliott-Clement, welliot@fwpclaw.com

Teresa Demchak, dem@gdblegal.com
Joseph E. Jaramillo, jej@gdblegal.com
Morris J. Baller, mjb@gdblegal.com

Kent Spriggs, kspriggs@spriggslawfirm.com

s/Shanthi V. Gaur
Shanthi V. Gaur
Littler Mendelson, P.C.
200 North LaSalle Street, Suite 2900
Chicago, IL 60601
sgaur@littler.com
