UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAST ST. LOUIS DIVISION

| | |
|---|---|
| JOHN TUCKER, ANGELA MILLER, JOVAN HANEY, LEON BRADLEY, WILLIAM STRICKLAND, OSCAR GREEN, MIKE JACKSON, KEVIN RIDDLE, AVERY ANDERSON, TRACI DANSBERRY, CARLOS ZIMMERMAN, CHRIS DARGIN, and KIMBERLY WAFFORD on behalf of themselves and others similarly situated, <br><br> and EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and PEARLE PHILLIPS, <br><br><br>         Plaintiffs, <br><br> vs. <br><br><br> WALGREEN COMPANY, <br><br>         Defendant. | Case No.:  05-cv-440-GPM (consolidated with 07-CV-172-MJR-CJP) <br><br><br> Chief Judge G. Patrick Murphy <br> Magistrate Clifford J. Proud |

**<u>CONSENT DECREE</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     PURPOSES OF THE CONSENT DECREE...................................................................3

III.    JURISDICTION, FINDINGS, AND DEFINITIONS ....................................................3

      A.      Jurisdiction and Venue...........................................................................3

      B.      Findings....................................................................................................3

      C.      Definitions................................................................................................4

IV.     CLASS DEFINITION AND CERTIFICATION..............................................................6

V.      SCOPE OF RESOLUTION AND RELEASE OF CLAIMS ............................................7

      A.      Class Release ...........................................................................................7

      B.      Plaintiffs, Plaintiff-Intervenor, and Individually Represented Class Members' Release..................................................................................8

      C.      Scope of the Resolution of the EEOC's Claims ...................................9

VI.     TERM OF THE DECREE............................................................................................9

VII.    DISPUTE RESOLUTION AND ENFORCEMENT OF THE DECREE BEFORE THE SPECIAL MASTER AND THE COURT ...........................................................11

      A.      Appointment and Authority of the Special Master.........................11

      B.      Informal Dispute Resolution Procedures ........................................11

      C.      Referral To The Special Master...........................................................12

      D.      Appeal From the Special Master's Decision ....................................13

      E.      Payment of the Fees and Costs of the Special Master ....................13

      F.      Attorneys' Fees and Costs Incurred in Utilizing the Dispute Resolution Procedures........................................................................14

      G.      No Third Party Beneficiaries ..............................................................14

      H.      Resort to the Court for Immediate Action .......................................14

      I.      Judicial Enforcement by Contempt....................................................15

VIII.   INJUNCTIVE RELIEF PROVISIONS .......................................................................15

      A.      General Injunctive Relief Provisions .................................................15

B.     Retention of Consultants and Consideration of Consultants' Recommendations ..............................................................16

       1.    Identification of the Consultants ..............................................16

       2.    Consideration of Consultants' Recommendations ..............................16

C.     Promotion Standards and Procedures ..............................................18

D.     Promotional Benchmarks ..............................................19

       1.    General Principles ..............................................19

       2.    Establishment and Attainment of Benchmarks ..............................................20

E.     Store Assignment Standards and Procedures ..............................................23

F.     Compensation Analysis ..............................................26

IX.    IMPLEMENTATION OF INJUNCTIVE RELIEF ..............................................27

A.     Walgreens' Internal Monitoring and Compliance Procedures ..............................................27

       1.    Walgreens' Decree Monitor ..............................................27

           a.    Selection of the Decree Monitor ..............................................27

           b.    Duties and Responsibilities of the Decree Monitor ..............................................27

           c.    Decree Monitor's Authority to Recommend Individual Relief ..............................................29

           d.    Replacement of the Decree Monitor ..............................................29

           e.    Resolution of a Dispute Regarding the Retention or Failure to Replace the Decree Monitor ..............................................30

           f.    Announcement of the Decree Monitor ..............................................31

           g.    Provision of Adequate Resources to the Decree Monitor ..............................................31

B.     Implementation of Policies and Procedures for Reporting, Investigating and Addressing Individual Complaints of Race Discrimination ..............................................31

C.     Communication of Consent Decree Requirements to Officers and Employees ..............................................36

D.     Notice ..............................................36

E.     Training ..............................................37

F.     Management Performance Evaluation and Accountability ..............................................39

       1.    District Manager and Pharmacy Supervisor ..............................................39

       2.      Review of Performance Evaluation Processes Pertaining to Covered Positions ..................................................................41

X.     RECORDKEEPING, REPORTING, AND COMPLIANCE MEETINGS ................41

    A.    Document Preservation .................................................................41

    B.    Access of Special Master and Monitoring Counsel to Retained Documents ................43

    C.    Compliance Reports .....................................................................45

        1.      Contents of Compliance Reports .........................................45

        2.      Summary of Compliance Reports .........................................46

    D.    Compliance Meetings ...................................................................47

XI.    MONETARY RELIEF FOR PLAINTIFFS AND CLASS MEMBERS ....................47

    A.    Establishment of Settlement Fund ................................................47

    B.    Payment of the Settlement Fund ..................................................48

        1.      Class Representatives, Plaintiff Wafford, and Plaintiff-Intervenor ...................49

        2.      Charging Parties and Individually Represented Class Members ........................50

        3.      Retaliation Claims of Plaintiff Tucker ..................................50

        4.      Attorneys' Fees and Costs of Class Counsel ........................50

        5.      Payment of Settlement Administrator's Fees ........................51

        6.      Settlement Class ...................................................................51

    C.    Allocation of the Net Settlement Amount by Categories of Recovering Class Members ................51

    D.    Procedure for Distribution of the Settlement Fund .......................53

    E.    Notice ...........................................................................................58

    F.    Objections and Exclusions ...........................................................58

    G.    No Solicitation of Objections or Exclusions .................................60

    H.    Defendant's Rescission of Agreement ..........................................60

    I.    Settlement Administrator's Duties and Responsibilities ...............61

XII.   ATTORNEYS' FEES, COSTS AND EXPENSES ................................................61

    A.    Basis for Award of Fees, Costs and Expenses ..............................61

     B.     Date for Payment .............................................................................................62

     C.     Monitoring Fees ..............................................................................................62

XIII.    MISCELLANEOUS PROVISIONS ............................................................................63

     A.     No Admission of Liability ................................................................................63

     B.     Duty to Support and Defend the Decree .........................................................63

     C.     Calculation of Time ........................................................................................64

     D.     The Decree is Binding on the Parties and their Successor and Assigns. .......64

     E.     The Consent Decree Is The Complete Understanding of the Parties...............64

     F.     Interpretation and Severability of Decree .......................................................64

     G.     Modification of Decree ...................................................................................64

     H.     Execution of Decree........................................................................................65

     I.     Return or Destruction of Documents ..............................................................65

EXHIBITS TO CONSENT DECREE

A.     Plaintiffs' and Individually Represented Class Members' Release

B.     Summary of Consent Decree

C.     Notice to Employees Re Settlement of Racial Discrimination Lawsuit

D.     Chart of Names of and Enhancement Amounts for Class Representatives, Plaintiff Wafford and Plaintiff Intervener Phillips

E.     Chart of Enhancement Payments To (1) Charging Parties And (2) Class Members Individually Represented By Class Counsel

F.     Estimated Settlement Amount Form

## I.    INTRODUCTION

On June 20, 2005, fourteen (14) current and former employees of Walgreen Co. ("Walgreens"), Johnny Tucker, Angela Miller, Jovan Haney, Leon Bradley, Arien Jackson, William Strickland, Oscar Green, Mike Jackson, Kevin Riddle, Avery Anderson, Malica Page, Traci Dansberry, Carlos Zimmerman, and Chris Dargin, filed a complaint on behalf of themselves and as representatives of a class of African American current and former employees of Walgreens (collectively referred to as "private plaintiffs") alleging a pervasive policy of race discrimination instituted and maintained by Walgreens in a continuing violation of 42 U.S.C. § 1981, as amended ("Section 1981").  The private plaintiffs' complaint was subsequently amended to include violations of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e et seq., and to substitute plaintiff Kimberly Wafford, who alleges that she was rejected for a Management Trainee position as both an external and internal applicant, for plaintiff Malica Page.

On March 7, 2007, Plaintiff, the U.S. Equal Employment Opportunity Commission (the "EEOC") filed a complaint alleging that Walgreens discriminated against Johnny Tucker, Pearle Phillips and twenty (20) additional Charging Parties because of their race, and engaged in a pattern and practice of racial discrimination against African American retail and pharmacy management employees in violation of Title VII.  On April 23, 2007, the Court entered an Order permitting Pearle Phillips ("plaintiff-intervenor") to intervene in the EEOC's action.

The EEOC, private plaintiffs, and plaintiff-intervenor claim that Walgreens' employment practices discriminated against African American retail and pharmacy management employees by (1) assigning African American employees in retail and pharmacy management career path positions to stores in African American and/or low income neighborhoods on the basis of their race (the assignment claim), and (2) denying qualified African Americans promotions within the retail and pharmacy management career path, and to district and corporate positions (the promotion claims.)  The private plaintiffs also allege that Walgreens engaged in a pattern or practice of discrimination against African American employees by compensating African

Americans in retail and pharmacy management positions less than similarly situated white employees (the compensation claims), and by failing to select African American internal and external candidates for the entry level management position of Management Trainee because of their race (the hiring claims).  This Consent Decree does not address the claims of:  (1) denial of promotions of qualified African Americans to district and corporate positions, other than District Manager and Pharmacy Supervisor, or (2) failure to select qualified African American internal and external applicants for the Management Trainee position.

Walgreens denies all of the allegations made by the private plaintiffs, plaintiff-intervenor, and the EEOC.  Walgreens, the EEOC, the private plaintiffs agree that assignment of an African American retail and pharmacy management employee to a store in an African American neighborhood, where the assignment is not related to the race of the assigned employee, is not an adverse employment action for purposes of Title VII or Section 1981 liability.  Walgreens denies that it has discriminated on the basis of race with respect to store assignments, promotions or compensation.

The two actions were consolidated on April 23, 2007.  Private plaintiffs, the EEOC, and Walgreens are collectively referred to as "the Parties."

The Parties agree that formal and informal discovery conducted in this action – depositions, documents produced, the experts' analyses and the other information exchanged during settlement discussions – is sufficient to reliably assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis.  All Parties believe that this Decree is fair, reasonable, and adequate to resolve this case in its entirety, and that this settlement is in the best interests of the private plaintiffs, of the class for which the private plaintiffs and the EEOC seek relief, and Walgreens.  In reaching this conclusion, all counsel and their respective clients have considered, among other things, the expense, inconvenience, delay, and other demands of continuing burdensome and protracted litigation, the risks inherent therein, and the benefits provided by the terms of this Decree.

II.    **PURPOSES OF THE CONSENT DECREE**

The purposes of this Consent Decree are:

A.    To review and evaluate Walgreens' selection procedures and standards to assure that African American employees of Walgreens have equal access to, and opportunity for, store assignments, and for selection and promotion to, and compensation in, Walgreens' retail and pharmacy management career paths, and to monitor the implementation of these procedures and standards in order to assure that such access and opportunity are provided;

B.    To provide appropriate relief for eligible Plaintiffs, Charging Parties and Class Members;

C.    To increase the awareness of African Americans concerning the various employment and career options available to them in Walgreens' retail operations, and to ensure that they are fully and fairly considered and trained for, assigned and promoted to, and compensated in Walgreens' retail and pharmacy management career paths on an equal and non-discriminatory basis;

D.    To create an expedited and efficient procedure for implementing equitable relief pursuant to the terms of this Decree; and

E.    To resolve and to provide finality to all disputes covered by this Decree in such a way as to avoid further expensive and protracted litigation.

III.    **JURISDICTION, FINDINGS, AND DEFINITIONS**

A.    <u>Jurisdiction and Venue</u>

This Court has jurisdiction over the Parties and the subject matter of this action. Venue is proper in this Court.

B.    <u>Findings</u>

The purposes of Title VII, Section 1981, relevant state fair employment statutes, and the public interest, will be furthered by the entry of this Decree.

C.    Definitions

"Approval Date" means the date upon which the Court signs this Decree after having determined that it is fair, adequate and reasonable.

"Best Efforts" means all reasonable steps necessary to realize or comply with the specific objectives to which the Best Efforts are directed.

"Charging Parties" are Ricky G. Nicholson, Charge No. 564-2007-00427; Charles W. Adams, Charge No. 490-2007-02177; Kathy Hoskin, Charge No. 460-2007-03415; Victor Oatts, Charge No. 510-2007-01556; LeNitra Oliver, Charge No. 541-2007-00001; Deborah Sanders, Charge No. 440-2007-05261; Shaun Thornton, Charge No. 280-2004-04431; Nichole Herron, Charge No. 280-2004-06429; Derrick Brown, Charge No. 280-2005-02050; and Alexandra Mwaura, Charge No. 510-2006-02371.

"Class Representatives" means Johnny Tucker, Angela Miller, Jovan Haney, Leon Bradley, William Strickland, Oscar Green, Mike Jackson, Kevin Riddle, Avery Anderson, Traci Dansberry, Carlos Zimmerman, and Chris Dargin

"Class Counsel" means Foland, Wickens, Eisfelder, Roper & Hofer, PC of Kansas City, Missouri; Spriggs Law Firm of Tallahassee, Florida; and Goldstein, Demchak, Baller, Borgen & Dardarian of Oakland, California.

"Court" means the United States District Court for the Southern District of Illinois, East St. Louis Division.

"Covered Complaint" means any complaint by an African American in a Covered Position, asserting that:  (a) any provision of this Decree has been violated with respect to his or her employment with the Company, or (b) he or she has been the subject of Race Discrimination, with respect to store assignment, promotion, or compensation.

"Covered Pharmacy Positions" refers to the Pharmacist ("RPS") and Pharmacy Manager ("RxM") positions.

"Covered Positions" means Management Trainee ("MGT"), Executive Assistant Manager ("EXA"), Store Manager ("MGR"), Pharmacist ("RPS"), and Pharmacy Manager ("RxM").

"Covered Retail Management Positions" or "Retail Management Personnel" means Management Trainee ("MGT"), Executive Assistant Manager ("EXA"), and Store Manager ("MGR").

"District" means the set of Walgreens' retail stores, and the geographical area(s) associated with them, that are within the responsibility of a District Manager. At present, there are approximately 220 Districts in the Company.

"Fund Administrator" means Settlement Services, Inc. or SSI.

"Job description" means a written statement of the nature of a job and the usual and typical activities involved in its performance, the duties and responsibilities of the job's holder; and the minimum and preferred qualifications for the job.

"Liability period" or "class period" means the period from June 20, 2001, through the Preliminary Approval Date.

"Monitoring Counsel" means the law firm of Goldstein, Demchak, Baller, Borgen & Dardarian, of Oakland, California, one of the Class Counsel firms, and Jean Kamp or her designee on behalf of the Equal Employment Opportunity Commission. Whenever this Decree calls for the submission of documents to, or attendance at meetings with Monitoring Counsel, Walgreens shall provide said documents or hold said meeting with Monitoring Counsel. Walgreens shall not be required to provide documents or attend meetings with any other representatives of Class Counsel.

"Preliminary Approval" or "Preliminary Approval Date" means the date on which the Court enters an order preliminarily approving this Decree and directs the giving of notice to members of the class providing them an opportunity to opt out of the Settlement Class or submit objections to the Decree, after holding a preliminary fairness hearing, if required;

"Race Discrimination" or "Discrimination on the Basis of Race" means unlawful discrimination against an employee on the basis that he or she is African American, including but not limited to retaliation against an employee because he or she has opposed practices he or she believes in good faith to constitute unlawful race discrimination or has participated in processes designed to obtain relief for alleged unlawful race discrimination.

"Region" means the set of Walgreens' Districts, the stores contained in those Districts, and the geographical area(s) associated with the Districts, each of which is under the responsibility of a single Operations Vice President.  At present, there are 23 Regions of the Company.

"Represented Class Members" or "Class Members individually represented by Class Counsel" means Tornica Chaney, Jelani Coppage, Robert Davis, Shaneika Foster, Dorthea McChester, and Rashaun Stout.

"Special Master" refers to the individual to be appointed pursuant to Section VII.A. of this Consent Decree.

"Walgreens," "Defendant," and the "Company" mean Defendant Walgreen Co.  For purposes of this Decree, Walgreens' "Store Operations" means a component of Walgreens that consists of its retail stores and pharmacies and the in-store and above-store level management structure and personnel overseeing the store and pharmacy operations.

"Walgreens' counsel" means the law firm of Littler Mendelson.

## IV.    CLASS DEFINITION AND CERTIFICATION

A.    For purposes of the non-monetary, injunctive and equitable relief provided in this Decree, the Settlement Class is certified (solely for the purpose of implementing this Consent Decree) pursuant to Federal Rule of Civil Procedure 23(b)(2) and consists of:

> All African Americans who are or were employed by Walgreens in any Covered Position for any length of time between June 20, 2001, and the Preliminary Approval Date (start and end dates inclusive).

B.      For purposes of the monetary relief provided in this Decree, the Settlement Class is certified (solely for the purpose of implementing this Consent Decree) pursuant to Federal Rule of Civil Procedure 23(b)(3) and consists of:

> All African Americans who are or were employed by Walgreens in any Covered Position, for any length of time, between June 20, 2001, and the Preliminary Approval Date (start and end dates inclusive), except those who file a timely request to opt out of the monetary relief provisions of the Decree.

C.      The Settlement Class closes on the Preliminary Approval Date.  All African Americans who are hired by Walgreens in Covered Positions after the Preliminary Approval Date, may avail themselves of the non-monetary equitable relief provided in the Decree but they shall not be entitled to any portion of the monetary relief provided in the Decree.

D.      Settlement Class members who file a timely request to opt out of the monetary relief provisions of this Decree as provided for in Section XI.F. 2-3 below, shall not be held to release, by virtue of this Decree, any claims for individual monetary relief or individual injunctive relief.

E.      In the event that Final Approval of this Decree is not obtained, Walgreens is not deemed by any provision in this Decree to have waived its objections and defenses to class certification and the Decree shall not be admissible in any court regarding the propriety of class certification or any other issue.

V.      **SCOPE OF RESOLUTION AND RELEASE OF CLAIMS**

A.      <u>Class Release</u>

Class Members who do not opt out of the <u>Tucker v. Walgreen Co.</u> action ("<u>Tucker</u> action") in the manner to be specified by the Court in an order granting Preliminary Approval and providing for notice of the settlement embodied in this Consent Decree shall be deemed to have thereby waived and released Walgreens from any and all claims of racial discrimination for monetary relief of any type that are covered by this Consent Decree or that might have been asserted on their behalf, or such claims for racial discrimination they could in the future assert under any cause of action against Walgreens, arising out of their employment with Walgreens up

to and including the Preliminary Approval Date, including but not limited to any claim for racial discrimination under any federal, state or local statute relating to their employment relationships with Walgreens, including but not limited to Title VII,  Section 1981, and analogous State law(s).  However, this Release and waiver of claims shall not extend to claims based on incidents occurring after the Preliminary Approval Date, or to matters that were not, nor could have been, asserted in the <u>Tucker</u> action by or on behalf of the Class Member.  The Parties understand and intend that the limitation periods for these claims that were not, nor could have been, asserted in the <u>Tucker</u> action, were not tolled during the pendency of this case.  This Release shall survive the termination of this Decree.

The Release shall exclude class claims for failure to hire  external and internal applicants for the Management Trainee position and class claims for promotion from retail store and pharmacy positions to district or corporate positions other than the District Manager and Pharmacy Supervisor positions ("Excluded Class Claims"), and neither the settlement nor Releases provided for by the Consent Decree shall be a bar against any African American person (apart from those identified in Section V.B, below) bringing a claim for discrimination based on race against Walgreens based on such Excluded Class Claims, provided that such claim is otherwise timely.  Such Excluded Class Claims shall be deemed to have been tolled during the pendency of the <u>Tucker</u> action through and until the Preliminary Approval Date.

B.    <u>Plaintiffs, Plaintiff-Intervenor, and Individually Represented Class Members' Release</u>

Each of the Plaintiffs, the Plaintiff-Intervenor, and Class Members individually represented by Class Counsel who receives an individual monetary payment from the Settlement Fund as provided in Section XI.B.2. of this Decree shall be required to sign a form of Release attached as Exhibit A to this Decree as a condition of receipt of payment.  Upon signing such release, each such individual shall be deemed to have thereby waived, and released Walgreens from, any and all claims arising at any time up to and including the date such individual signs the form of Release attached to this Decree, including but not limited to any claims for monetary

relief of any type and attorneys' fees and costs that he or she asserted in the <u>Tucker</u> action, or in the case of the Plaintiff-Intervenor in her own action, or that he or she might have asserted, or could in the future assert under any cause of action against Walgreens arising out of his or her employment or application for employment with Walgreens, including but not limited to, any claim under any federal, state or local statute relating to his or her employment relationship with Walgreens, including but not limited to, Title VII, Section 1981, and analogous provisions of State laws.  This Release shall survive the termination of this Decree.  However, this Release and waiver of claims shall not extend to claims based on incidents occurring after the date such Plaintiff, Plaintiff-Intervenor, and Class Member individually represented by Class Counsel signs such Release.

      C.     <u>Scope of the Resolution of the EEOC's Claims</u>

This Decree shall fully and finally resolve any claims asserted by EEOC in its Complaint arising from incidents occurring prior to the Preliminary Approval Date.  Nothing herein shall be deemed to resolve any EEOC charges, other than those filed by the Plaintiff-Intervenor and the Charging Parties, and it is the intention of Walgreens and the EEOC that this release terminates all investigations of charges filed by the Plaintiff-Intervenor and the Charging Parties upon which EEOC based its Complaint.  This Release shall survive the termination of the Decree.

## VI.    TERM OF THE DECREE

      A.     Unless provided otherwise, the equitable provisions in this Decree are effective immediately upon the Approval Date.

      B.     The provisions of this Decree shall remain in effect for a period of five (5) years from the Approval Date.  Walgreens may file a motion to be relieved of the provisions of the Decree at any point following the expiration of four (4) years from the Approval Date.  The Parties may stipulate that Walgreens should be relieved of the provisions of the Decree.  Absent such agreement, in order to be relieved of the provisions of the Decree before the end of the full five (5) year period, Walgreens must demonstrate that:  (1) it has satisfied its duty to use Best Efforts with respect to its obligations under the Decree; (2) it has implemented and maintained

all programs mandated by the Decree; (3) it has used its Best Efforts to satisfy each of the Benchmarks during the preceding two (2) years; and (4) it has satisfied all monetary provisions of the Decree.  Walgreens bears the burden of demonstrating to the Court that it has satisfied those conditions.  Monitoring Counsel may oppose any motion of Walgreens to be relieved of the provisions of the Decree on the grounds that any of these conditions have not been met. Unless and until the Court issues an order granting the motion to be relieved, all provisions of the Decree shall remain in full force and effect.

      C.     Walgreens shall provide thirty (30) days notice to the Special Master and Monitoring Counsel of any motion and briefing thereon to be relieved of the provisions of the Decree before the full period of five (5) years.  Monitoring Counsel shall have thirty (30) days to provide any opposition to the motion to the Special Master and Walgreens.  Walgreens shall have fifteen (15) days to provide its reply to Monitoring Counsel's opposition, if any, to the Special Master and Monitoring Counsel.  The Special Master shall have thirty (30) days to prepare a written recommendation to the Court as to the resolution of the motion to be relieved. The Parties shall then jointly file all of the briefing and the Special Master's recommendation with the Court, and request that the Court set a hearing on the motion.  Each party may file and serve a response to the Special Master's recommendation, not to exceed the (10) pages, not later than fourteen (14) days before the scheduled hearing.  However, the Parties may not file any other briefing except their responses to the Special Master's recommendation and copies of their prior submissions to the Special Master, unless requested to do so by the Court.

      D.     The Court shall retain jurisdiction of this action during the Term of the Decree for the purpose of entering all orders authorized hereunder, which may be necessary to implement the relief provided herein or to enforce the Decree.

**VII.    DISPUTE RESOLUTION AND ENFORCEMENT OF THE DECREE BEFORE THE SPECIAL MASTER AND THE COURT**

A.    <u>Appointment and Authority of the Special Master</u>

1.    Walgreens, Class Counsel and EEOC agree to the appointment of Hunter R. Hughes, III as Special Master.  The Special Master may be replaced or removed:  (i) at the written request of the Special Master, (ii) at the joint written request of Monitoring Counsel and Walgreens; or (iii) by order of the Court upon motion of either Walgreens or Monitoring Counsel demonstrating that good cause exists for the removal of the Special Master.

2.    In the event that the Special Master or his successor ceases to function as Special Master for any reason including death, disability, voluntary resignation, the joint written request of Monitoring Counsel and Walgreens, or an order of the Court, Monitoring Counsel and Walgreens shall make a good faith effort to select a new Special Master by mutual agreement.

3.    If Monitoring Counsel and Walgreens are unable to reach agreement as to a successor Special Master within forty-five (45) days following the date the designated Special Master ceases to function in that capacity, the Court, upon motion of either Monitoring Counsel or Walgreens, shall appoint a successor Special Master.  Monitoring Counsel and/or Walgreens may nominate to the Court persons for consideration as the successor Special Master.  Both Monitoring Counsel and Walgreens shall have the right to interview any nominated person and to present argument and evidence to the Court regarding the selection of a successor Special Master.

4.    The Special Master shall have authority to resolve all disputes arising under the Decree, subject to limitations and standards set forth in the Decree.

B.    <u>Informal Dispute Resolution Procedures</u>

1.    At the request of either Monitoring Counsel or Walgreens, Monitoring Counsel and Walgreens shall confer as necessary with regard to any dispute arising under the Decree.  Walgreens and Monitoring Counsel shall use their Best Efforts to resolve promptly any dispute regarding the interpretation, implementation or application of the Decree, including Walgreens' compliance with any of its provisions, according to the procedures set forth below.

2.      If Monitoring Counsel or Walgreens has good reason to believe that a legitimate dispute exists as to the interpretation, application, or enforcement of any provision of this Decree, the initiating party shall promptly give written notice to the other party, including: (a) a reference to all specific provisions of the Decree that are involved; (b) a statement of the issues; (c) a statement of the remedial action sought by the initiating party; and (d) a brief statement of the specific facts, circumstances and any other arguments supporting the position of the initiating party.

3.      Within ten (10) days after receiving such notice, the non-initiating party shall respond in writing to the statement of facts and arguments set forth in the notice and shall provide its written position, including the facts and arguments upon which it relies in support of its position.

4.      Monitoring Counsel and Walgreens shall undertake good faith negotiations, which should include a meeting or meetings by telephone or in person and the exchange of relevant documents and/or other information, to attempt to resolve the issue(s) in dispute or alleged noncompliance.  The Parties shall use Best Efforts to resolve the disputed matter(s) within twenty (20) days after the initiating party's receipt of the non-initiating party's response required by subsection B.3., above.

5.      The Special Master, upon motion, may permit Monitoring Counsel or Walgreens to take post-settlement discovery as provided by the Federal Rules of Civil Procedure, however, post-settlement discovery (i) shall only be taken as to matters relevant to the underlying claim of breach, and (ii) shall only be permitted if the Special Master determines that the informal exchange of documents or information has not been sufficient to allow Monitoring Counsel or Walgreens to present the dispute upon a factual record adequate for a fair determination of the issue.

C.      <u>Referral To The Special Master</u>

1.      If Monitoring Counsel and Walgreens fail to resolve any differences or disputes regarding the interpretation, implementation or application of the Decree pursuant to the

Dispute Resolution Procedures, Monitoring Counsel or Walgreens may file a motion with the Special Master, with a supporting brief, seeking resolution of the dispute or the issue of non-compliance, provided, however, that: (i) the moving party has made Best Efforts to resolve the matter for at least the twenty (20) day period provided for in subsection B.4., above; (ii) prior to the filing of such motion, the initiating party has served a written notice of "impasse" upon the other party; and (iii) such motion shall be limited to the dispute(s) and/or issue(s) as to which the Dispute Resolution Procedures were exhausted.

2.     The non-moving party will have ten (10) days to respond to any such motion by filing a brief with the Special Master and serving it on the moving party.

3.     The Special Master shall attempt, within thirty (30) days after the filing of the non-moving party's brief, to resolve the dispute. The Special Master may within that period schedule a telephonic or in-person hearing or other proceeding to resolve the matter by consent of the Parties or to provide them with an opportunity to present such evidence or argument as deemed appropriate by the Special Master in the absence of a consensual resolution.

4.     The Special Master shall, within thirty (30) additional days after such hearing as he may have permitted, issue a written determination, including findings of facts, if requested by any party.

D.     Appeal From the Special Master's Decision

Either Monitoring Counsel or Walgreens may appeal a decision of the Special Master to the Court provided that such an appeal is filed within fourteen (14) days of the Special Master's decision. Any such appeal shall be brought by motion pursuant to the Local Rules of the Court and Federal Rules of Civil Procedure. The decision rendered by the Special Master shall be affirmed unless the Court finds that the Special Master made clearly erroneous findings of fact or wrongly interpreted or applied the terms of this Decree.

E.     Payment of the Fees and Costs of the Special Master

Walgreens shall pay for the fees and expenses of the Special Master during the Term of this Decree.

F.     Attorneys' Fees and Costs Incurred in Utilizing the Dispute Resolution
Procedures

Except as provided for in Section XII.C., Monitoring Counsel and Walgreens shall bear

their own attorney's fees and costs for all work performed through resolution by the Special

Master.  In the event that either Monitoring Counsel or Walgreens seeks to appeal any decision

of the Special Master, the prevailing party in such appeal shall be entitled to recover its

reasonable attorneys' fees, costs and expenses incurred in such appeal from the other party,

consistent with applicable standards under Title VII.  Whether and to what extent any party is a

prevailing party and shall be awarded fees, costs and expenses shall be determined in the sole

and absolute discretion of the Court.

G.     No Third Party Beneficiaries

Third parties shall not have standing to petition, and Class Members are enjoined from

seeking, to have the Court enforce this Decree or hold Walgreens or any of its officers, agents, or

managers in contempt under Section VII.I. below.  Rather, any Class Member or other individual

concerned about Walgreens' compliance with this Decree may so notify Monitoring Counsel and

request that they fulfill their responsibility to examine Walgreens' compliance and to seek such

relief, if any, as may be appropriate.  Plaintiffs, Class Members, or third parties shall not have the

right to initiate or conduct, or compel Monitoring Counsel to utilize the Dispute Resolution

Procedures or to require the Special Master to receive or act on complaints or disputes other

those initiated by Monitoring Counsel or Walgreens.

H.     Resort to the Court for Immediate Action

The provisions of this Section do not prevent Monitoring Counsel or Walgreens from

promptly bringing an issue directly to the Court when exigent facts or circumstances require

immediate Court action to prevent a serious violation of the terms of this Decree, which

otherwise would be without a meaningful remedy.  The moving papers shall explain the facts and

circumstances that allegedly necessitate immediate action by the Court.  Absent a showing of

exigent facts or circumstances, the Court shall refer the matter to the Special Master to resolve in

accordance with the procedures set forth above.  If any such matter is brought before the Court

requesting immediate action, the other party shall be provided with appropriate actual notice, and an opportunity to be heard on the motion under the Local Rules of the Court and the Federal Rules of Civil Procedure.  The Court in its discretion may set such procedures for emergency consideration as are appropriate to the particular facts or circumstances, but no such matter may be heard or considered on an ex parte basis.

       I.     <u>Judicial Enforcement by Contempt</u>

Monitoring Counsel may petition the Court to hold Walgreens or its officers, agents, or managers in contempt only after (a) having exhausted the Dispute Resolution Procedures set forth in Section VII.B.-D., above, without having obtained reasonably effective remedial action, and (b) having, after a reasonable investigation, concluded in good faith that the standards for a contempt citation have been met.

## VIII.  INJUNCTIVE RELIEF PROVISIONS

During the Term of the Decree, Walgreens shall implement the following policies, practices, and procedures in a non-discriminatory manner in order to achieve the purposes and specific provisions of this Decree.

      A.     <u>General Injunctive Relief Provisions</u>

      1.     Walgreens shall not enact, maintain or implement any policy or practice that discriminates against any employee on the basis of race.

      2.     Walgreens shall not take any action against any future, current or former employee because he or she opposed discrimination on the basis of race, filed a charge of discrimination on the basis of race, testified, furnished information or participated in any manner in any investigation, proceeding or hearing in connection with any charge or complaint of discrimination on the basis of race or participated in any manner in connection with the monitoring or implementation of this Decree, or sought and/or received any monetary and/or non-monetary relief pursuant to this Decree.

      3.     Walgreens shall maintain non-discrimination and non-retaliation policies and an internal complaint procedure designed to assure equal employment opportunity.

4.    Walgreens' employees complaining of alleged violations of the provisions set forth in this Decree may use Walgreens' internal complaint procedure or, as permitted by law, may file charges with the EEOC or with any state or local fair employment practices agency ("FEP agency") having jurisdiction of such charges.  The Parties mutually intend that the Dispute Resolution and Enforcement Provisions of this Decree shall not be used as an alternative method for Class Members to litigate or otherwise pursue claims for individual relief with respect to alleged Race Discrimination or any other individual relief.  Individual complaints of such alleged violations, as distinguished from systemic pattern or practice allegations, shall not be considered to raise an issue of compliance or non-compliance with the Decree, except insofar as the conduct of a Walgreens' officer, agent, or manager is of the level and nature necessary for the issuance of a contempt citation under Section VII.I above.

B.    Retention of Consultants and Consideration of Consultants' Recommendations

1.    Identification of the Consultants

a.    Within thirty (30) days following Preliminary Approval, the Parties shall agree on (i) the identity of the consultants Walgreens will retain to review certain of Walgreens' employment processes, which are specified below in Sections VIII.C.2., IX.B.1-3, IX.E.3, and IX.F.1-2 and to make written recommendations regarding modification of such processes, and (ii) a schedule for such consultants to complete their respective review of Walgreens' employment processes and make their written recommendations, if any, regarding modifications of the processes.

2.    Consideration of Consultants' Recommendations

a.    Within thirty (30) days of its receipt of each consultant's recommendations, Walgreens shall provide a copy of the consultant's written recommendations to Monitoring Counsel, together with a written statement identifying those recommendations it intends to implement.

b.      If Walgreens decides not to implement one or more of the consultant's recommendations, Walgreens shall identify that recommendation (or those recommendations) in its written statement and provide an explanation of the reason(s) why implementation of the recommendation(s) would not be in Walgreens' best interests to implement.  In its written statement, Walgreens may propose an alternative to the rejected recommendation(s) that Walgreens believes (a) would serve the same objective(s) as the rejected recommendation(s), and (b) is consistent with the purposes of this Decree.

c.      If Monitoring Counsel disagrees with Walgreens' position regarding the consultant's recommendations and Walgreens' proposed alternative, if any, both parties shall confer and make a good faith effort to resolve their differences.

i.      If agreement with respect to the implementation of the consultant's recommendations cannot be reached, Monitoring Counsel may initiate the Dispute Resolution Procedures.  During these procedures, Walgreens shall establish why it believes the recommendation is not in Walgreens' best interests, and Monitoring Counsel shall establish that the implementation of the proposal would be consistent with (i) professional standards applicable to the employment process at issue and (ii) the purposes of this Decree.

ii.      If the matter cannot be resolved informally between Walgreens and Monitoring Counsel, the issue may then be referred to the Special Master pursuant to the Dispute Resolution Procedures.  If the Special Master agrees with Monitoring Counsel's position, then Walgreens shall have the opportunity to propose an alternative to the disputed proposal that satisfies its legitimate, non-discriminatory interests, professional standards applicable to the employment process at issue, and the purposes of this Decree.

d.      If Monitoring Counsel object to any of the consultant's recommendations that Walgreens states it intends to implement, it shall be Monitoring Counsel's burden to demonstrate, through the Dispute Resolution Procedures, that the recommendation is not consistent with (i) professional standards applicable to the employment process at issue and (ii) the purposes of this Decree.

C.     Promotion Standards and Procedures

1.     Walgreens is enjoined from violating Title VII and Section 1981 by discriminating on the basis of race in the selection of persons in Covered Positions for promotion.

2.     Walgreens shall, pursuant to Section VIII.B.1. above, retain a consultant and set a schedule for the consultant to develop written job analyses and job-related criteria for the following positions:  EXA, MGR, DM, RPS, RxM, and RxS, and using its consultant's written job analyses, develop and implement, if appropriate, selection policies and procedures for the EXA, MGR, DM, RPS, RxM, and RxS positions.  At a minimum, those selection policies and procedures should include:

a.     Standardized and job related application procedures and, where consideration is not based on an application process, standardized methods of selecting persons in Covered Positions to be considered for promotion;

b.     Standardized and job related procedures for selection to any management training programs, including but not limited to the Applied Drug Store Management ("ADSM") and Emerging Leader ("EL") programs;

c.     Standardized and job related procedures for the consideration of employees in Covered Positions participation in any management training programs, including but not limited to the ADSM and EL programs, in making promotion decisions;

d.     A thorough assessment of tests used (if any) in the selection process to assure that the tests do not have an adverse impact on African Americans in Covered Positions, though use of a test that has an adverse impact is not prohibited if the test is validated by standard processes required by the Uniform Guidelines on Employee Selection Procedures (UGESP), 29 C.F.R. § 1607, and there is no alternative employment test or selection practice which would satisfy Walgreens' legitimate interests without having a disparate impact on a protected class;

e.      Effective communication to all employees in Covered Positions regarding career opportunities, training programs, and promotion policies and procedures, including but not limited to the use of People Plus Learning training programs on the Company Intranet, invitations sent to all MGTs to participate in the ADSM program, and written notification regarding selection policies and procedures;

f.      Effective processes for allowing employees in Covered Positions to express an interest in promotion and for registering and tracking the status of those employees; and

g.      Procedures for ensuring compliance with the written selection policies and procedures, including but not limited to training for all persons involved in the selection process and disciplinary action for managers responsible for selecting employees in Covered Positions for promotion who do not follow the written procedures (including disregarding exclusive selection procedures such as the Job Opportunity Program ("JOP").

D.      Promotional Benchmarks

1.      General Principles

a.      In order to provide equal opportunity and appropriate relief to members of the Class, Walgreens shall use its Best Efforts to meet the Promotional Benchmarks set forth in this Section.  These Promotional Benchmarks do not establish maximum or minimum rates for the selection of African Americans; rather these Promotional Benchmarks establish selection rates that Walgreens shall use its Best Efforts to achieve.

b.      In attempting to meet these Promotional Benchmarks, Walgreens shall not be required to employ or promote unqualified persons, or displace any current employee from his or her job position.  These Promotional Benchmarks are not quotas, but are designed to afford guidance as to whether equal employment opportunity and an appropriate remedy are being achieved as required by this Decree.

c.      Walgreens' failure to achieve a Promotional Benchmark in a particular Region or District for a particular period will not, absent other evidence, be considered

a violation of the Decree unless Walgreens has failed to use its Best Efforts to meet the Promotional Benchmark.  As evidence of Best Efforts, Walgreens may demonstrate, for example, that:  (a) the proportion of good faith offers made to African Americans was at least as high as the Promotional Benchmark percentage; (b) significant differences in the relative experience, skill or qualification of African Americans versus the Promotional Benchmark explain the failure to achieve the Promotional Benchmark, and that such experience, skill or other qualification is job-related for the job in question, as determined using a job analysis, for example, and is consistent with business necessity.

        2.      <u>Establishment and Attainment of Benchmarks</u>

        a.      Promotional Benchmarks will be established in each District for selection of Walgreens' employees to the EXA, MGR, DM, RxM, and RxS positions (the "Benchmark Positions").  All Walgreens' managers who are responsible for and who supervise the selection of persons to these positions shall be informed of the specific Promotional Benchmarks within their area of responsibility.

        b.      The initial Promotional Benchmark in each District for each Benchmark Position will be established by determining the number of qualified persons in the applicable eligibility pools in the respective District (or, in the case of DMs and RxSs, the geographical area specified in their documented relocation preferences paperwork) for each Benchmark Position thirty (30) days preceding the Approval Date (the "Benchmark Anniversary Date").  Notwithstanding the date specified in the preceding sentence, if that date falls within ninety (90) days before the next regularly scheduled Equal Opportunity Program monitoring cycle, Walgreens need not set initial Promotional Benchmarks pursuant to this subparagraph.  In the event Walgreens elects not to set initial Promotional Benchmarks pursuant to this provision, Walgreens shall (1) give notice to Monitoring Counsel and the EEOC in writing prior to the date on which the initial Promotional Benchmarks would otherwise be established, and in that notice shall specify the deferred date on which they will be set; and (2) establish Promotional Benchmarks for each Benchmark Position by the method specified in this subparagraph based on

the numbers of qualified persons in the applicable eligibility pools as of thirty (30) days before such Equal Opportunity Program monitoring cycle.

        c.      Separate eligibility pools will be established for promotions to each District's Benchmark Position, consistent with Walgreens' retail and pharmacy management career paths.

        d.      The initial eligibility pool for promotion to the EXA position will be those MGTs in the relevant District who, as of the Benchmark Anniversary Date, have completed the required MGT training and applied for the EXA position through the ADSM program.  The initial eligibility pool for promotion to the MGR position will be those EXAs in the relevant District who, as of the Benchmark Anniversary Date, have completed the ADSM program and have received their PTCB certification.  The initial eligibility pool for promotion to the RxM position will be those Pharmacists in the relevant District who, as of the Benchmark Anniversary Date, have completed the required Rx for Management training and applied for any available RxM position through the JOP.  The initial eligibility pools for promotion to the DM and RxS positions will be those MGRs and RxMs, respectively, who, as of the Benchmark Anniversary Date, are enrolled in the Emerging Leader Program.  Geographical preferences may be considered in the latter analysis.  The eligibility pools determined as specified in this subsection shall be referred to hereinafter collectively as the "Eligible Feeder Pools."

        e.      The Promotional Benchmark percentage for each Benchmark Position shall be determined by dividing (a) the total number of African Americans in the Eligible Feeder Pool for such position in the relevant District (or, in the case of DMs and RxSs, the geographical area specified in their documented relocation preferences paperwork) by (b) the total number of employees in the Eligible Feeder Pool for such position in the relevant District (or, in the case of DMs and RxSs, the geographical area specified in their documented relocation preferences paperwork) .  Promotional Benchmarks will be stated as percentages, rounded up or down consistent with standard arithmetic practice.  Example:  If there are 50 EXAs in the Eligible Feeder Pool in the relevant District and 10 of those EXAs are African American, then

the Promotional Benchmark for promotions to the Store Manager position in that District would be 20 percent.

   f.  Whether Walgreens has attained its Promotional Benchmarks will be assessed based on Regional Benchmarks calculated as set forth in this paragraph.  The Regional Benchmark for each Benchmark Position shall be determined for each year of the Term of this Decree as a weighted average of the District Benchmarks in that Region for that year. The weight assigned to a particular District Benchmark shall be based on the relative number of promotions to the Benchmark Position occurring within that District relative to all such promotions occurring within the Region in that same year.  For example, if the there are 10 promotions to EXA in a particular District in a given year, and there are 100 total promotions to EXA in the Region, then that District's Benchmark for the EXA position will be weighted by .10 in the calculation of the Regional Benchmark for EXAs.  Where the percentage of African Americans among those promoted to the Benchmark Position is not materially different from the Regional Benchmark, Walgreens shall be deemed to have attained the Regional Benchmark for that Benchmark Position in that year.

   g.  The initial Promotional Benchmarks will remain in place until the beginning of Walgreens' next regularly scheduled Equal Opportunity Program monitoring cycle, at which time, Walgreens shall review its progress in meeting the initial Promotional Benchmarks and calculate and establish new Promotional Benchmarks for the subsequent twelve (12) month period.  Such new Promotional Benchmarks will be calculated based on the Eligible Feeder Pools as defined in subsection d, as may be modified by any additional or revised promotion selection criteria that Walgreens adopts in consultation with the Consultant retained pursuant to Section VII.C.2 of this Decree.

   h.  Thereafter, Walgreens shall calculate Promotional Benchmarks in each District and Region annually following the review and recalculation of the initial Promotional Benchmarks.  Walgreens also shall review at least every six (6) months its progress in attaining the Promotional Benchmarks as provided for in subsection g. above.

i.      Walgreens shall use its Best Efforts to fill vacancies to Benchmark Positions with African American persons in the Eligible Feeder Pools at least equal to the Promotional Benchmarks set forth in this Section.

3.      If Walgreens acquires or purchases another company with operations in any particular District, and said acquisition or purchase creates "vacancies" within the District, Walgreens shall use its Best Efforts to achieve its Promotional Benchmarks within the relevant District as soon as possible, but in no event no later than two (2) years after such acquisition or purchase or within six (6) months after Walgreens' personnel and operating systems are implemented in the affected stores of the acquired company, whichever is sooner.

E.      Store Assignment Standards and Procedures

1.      Walgreens shall not make store assignments of personnel in the Covered Positions based on the race of the employee.

2.      On an annual basis with the first analysis to be conducted as of the one year anniversary of the Approval Date and every twelve (12) months thereafter, Walgreens, under the direction of the Decree Monitor, will analyze the store assignments of African Americans and whites in the EXA, MGR, RPS, and RxM positions (i.e., assignments after the Approval Date) by District, aggregated to the Region and company-wide, as one means to ensure its compliance with the prohibition set forth in Section E.1. above.  Notwithstanding the date specified in the preceding sentence, if that date falls within ninety (90) days before Walgreens' annual Employee Relations Department review of diversity/EO data for the Covered Positions, Walgreens may elect to defer the analysis of store assignments until the date of such review.  In the event Walgreens elects to defer the effective date of the store assignment analysis pursuant to this provision, Walgreens shall give notice to Monitoring Counsel in writing prior to the date on which the analysis would otherwise be due to be conducted, and in that notice shall specify the deferred date on which the analysis will be conducted. Within ten (10) days after the analysis is completed, Walgreens shall provide it, along with the relevant underlying data, to Monitoring Counsel.

3.    If the analysis shows that African American EXAs, MGRs, RPSs and RxMs are disproportionately assigned to stores with a customer base: (1) greater than 40% African American; (2) 15-40% African American; or (3) with average annual income of less than $40,000, as compared to whites for such positions by District, aggregated to the Region and company-wide, Walgreens shall investigate to determine the cause of such disproportionate assignment(s) and take corrective action, if necessary, following the first year's analysis.  Within sixty (60) days after providing its initial analysis, Walgreens shall complete its investigation and provide it, along with the relevant underlying data, to Monitoring Counsel.

4.    In the case of MGTs, Monitoring Counsel will review the year-end data produced by Walgreens as part of its annual Compliance Reports.  If, within six (6) months thereafter, Monitoring Counsel determine, based on their review of the data, that African American MGTs are disproportionately assigned to stores with a customer base: (1) greater than 40% African American; (2) 15-40% African American; or (3) with average annual income of less than $40,000, as compared to white MGTs within a particular District, Monitoring Counsel shall provide the Decree Monitor with their analysis of those issues, including a list of the particular District(s) in which the disproportionate assignments are believed to have occurred. Within six (6) months thereafter, Walgreens shall have the opportunity to provide a response to Monitoring Counsel's analysis.  If necessary, for a six (6) month period thereafter, Walgreens shall monitor the MGT assignments in the relevant District(s) on a prospective basis and shall take other necessary corrective action.  Walgreens shall provide a report of its monitoring and corrective actions, along with any relevant underlying data, to Monitoring Counsel within sixty (60) days after these reports are completed.

5.    For purposes of either analysis referenced in Sections E.2. or E.3. above, or the review of the year-end data referenced in Section E.4. above, "disproportionate" assignments shall not alone be considered dispositive evidence of race discrimination.

6.    For purposes of either analysis referenced in Sections E.2. or E.3. above, the "relevant data" shall include:

      a.     positions held during last year (including current position) and dates of each position, if more than one was held;

      b.     store assignment(s) and store address (including dates of each assignment, if more than one was held);

      c.     date of hire;

      d.     date on which an employee became an MGR, EXA, RPS, or RxM;

      e.     employee identification number;

      f.     employee home address;

      g.     employee birth date;

      h.     District assignment(s);

      i.     base pay;

      j.     all bonuses broken out by type of bonus;

      k.     education;

      l.     performance rating;

      m.     race (white, African American, or other);

      n.     store performance (including profitability, store volume, and associated rates of increase for each store);

      o.     store characteristics (defined as Total Gross Profit Dollars; Primary Bonus of the MGR; Average Sale Per Customer; Total Store Sales); and

      p.     store customer base information, as applied to the store assignment analysis set forth in Section E.2. above.

      7.     For purposes of the "year-end data" referenced in Section E.4. above, the "relevant data" shall include:

      a.     positions held during last year (including current position) and dates of each position, if more than one was held;

      b.     store assignment(s) and store address (including dates of each assignment, if more than one was held);

        c.      date of hire;

        d.      date on which employee became an MGT;

        e.      employee identification number;

        f.      employee home address;

        g.      employee birth date;

        h.      District assignment(s);

        i.      base pay;

        j.      education;

        k.      performance rating;

        l.      race (white, African American, or other); and

        m.      store customer base information, as referenced in Section E.4.

above.

        F.      <u>Compensation Analysis</u>

        1.      Walgreens, under the direction of the Decree Monitor, will analyze, on at least an annual basis, compensation and bonuses paid to EXAs, MGRs, RPSs, and RxMs for statistically significant compensation disparities between African Americans and whites in these positions based upon the relevant data specified in Section E.6.  This analysis shall not be required for "non-established" stores.  The first analysis shall be conducted as of the one year anniversary of the Approval Date and every twelve (12) months thereafter.  Notwithstanding the date specified in the preceding sentence, if that date falls within ninety (90) days before Walgreens' annual Employee Relations Department review of diversity/EO data for the Covered Positions, Walgreens may elect to defer the Compensation Analysis until the date of such review. In the event Walgreens elects to defer the effective date of the compensation analysis pursuant to this provision, Walgreens shall give notice to Monitoring Counsel in writing prior to the date on which the analysis would otherwise be due to be conducted, and in that notice shall specify the deferred date on which the analysis will be conducted.

2.      Where the foregoing analysis shows statistically significant compensation disparities, if any, between African American and white EXAs, MGRs, RPSs and RxMs in any position, Walgreens, under the direction of the Decree Monitor, shall investigate to determine the cause(s) of the disparities.

3.      Walgreens shall report to Monitoring Counsel in writing its findings within sixty (60) days of completing its annual analyses and, where the disparities, if any, cannot be explained by race-neutral factors or legitimate business reasons, Walgreens shall at the same time present its proposal to use specific Best Efforts described in the proposal to eliminate the disparities or state the reasons why, consistent with the purposes of the Decree, no such corrective steps are appropriate or necessary.  In the event that Monitoring Counsel considers Walgreens' response to be inadequate, Monitoring Counsel may initiate the Dispute Resolution Procedures provided for in Section VII. B.-D.

## IX.    IMPLEMENTATION OF INJUNCTIVE RELIEF

A.      <u>Walgreens' Internal Monitoring and Compliance Procedures</u>

1.      <u>Walgreens' Decree Monitor</u>

a.      <u>Selection of the Decree Monitor</u>

Walgreens shall designate a Decree Monitor who shall be charged with overall responsibility for monitoring Walgreens' compliance with the terms of the Decree.  The Decree Monitor shall be Kenneth R. Weigand, Walgreens' Sr. Vice President of Human Resources.  The Decree Monitor shall report directly to Walgreens' CEO with respect to Walgreens' compliance with this Decree.  The Decree Monitor may delegate such duties as he deems appropriate; however, the Decree Monitor shall at all times maintain overall responsibility for monitoring Walgreens' compliance with the terms of the Decree.

b.      <u>Duties and Responsibilities of the Decree Monitor</u>

The Decree Monitor shall use Best Efforts to assure Walgreens' implementation and compliance with the provisions of this Decree.  Such efforts shall include, but not be limited to, the following:

i.    Monitoring the establishment, implementation and revision of Walgreens' procedures for store assignments, training, promotion, and other employment practices as provided in this Decree;

ii.    Monitoring whether Walgreens has achieved the Promotional Benchmarks and, if not, whether the failure to achieve any such Promotional Benchmark is justified pursuant to the terms of this Decree, including the Best Efforts requirement;

iii.    Monitoring the store assignments and compensation of employees in Covered Positions, and overseeing the development and implementation of any necessary corrective actions as provided for in this Decree;

iv.    Overseeing the development and implementation of the training programs provided for under this Decree;

v.    Coordination with the Consultants to be retained pursuant to Sections VIII.C.2., , IX.B.1-3, IX.E.3, and IX.F.1-2 of this Decree; providing the Consultants' recommendations or reports to Monitoring Counsel and receiving Monitoring Counsel's comments as provided for in Section VIII.B.2.. of this Decree; and overseeing and monitoring the implementation of all recommendations of the Consultants as are adopted by Walgreens or directed by the Special Master pursuant to Section VII.B.-D. of this Decree;

vi.    Overseeing the investigation, collection, tracking, and appropriate resolution of complaints Race Discrimination submitted under Walgreens' Internal Complaint Procedure as that Procedure exists as of the Approval Date or as subsequently modified during the Term of this Decree, including the determination of whether the complaints indicate any pattern of systemic discrimination;

vii.    Reporting to Walgreens' CEO, Store Operations Senior Executive Vice President, Store Operations Senior Vice Presidents, and the Senior Vice President of Human Resources (if the Decree Monitor does not occupy that position), on at least a semi-annual basis during the first two (2) years of the Decree and then annually during the

remainder of the Decree on the establishment, implementation, maintenance and compliance with the practices and obligations required by this Decree and the results achieved by Walgreens under this Decree; and

       viii. Submitting the Compliance Reports and other documents and information to Monitoring Counsel as specified in this Decree; and meeting with, or coordinating meetings of other senior executives as Walgreens may deem appropriate with, Monitoring Counsel as provided for in Section X.C. and D. of this Decree.

    c. <u>Decree Monitor's Authority to Recommend Individual Relief</u>

   The Decree Monitor also shall have the authority to recommend to the responsible Store Operations managers or executives an award of appropriate relief to any Class Member or African American person in Covered Positions who the Decree Monitor concludes, based on a complaint made through the Internal Complaint Procedure or any other source(s) of information, has been the victim of:  (i) a violation of the Decree or (ii) Race Discrimination, with respect to his or her store assignment, promotion, or compensation.  Such relief may include being selected, promoted, reassigned, or provided with other appropriate relief, including monetary relief. African American employees in Covered Positions who make a complaint through the Internal Complaint Procedure and are found to have been discriminatorily assigned to any store on the basis of his or her race shall be presumed to be entitled to monetary damages.  Should Walgreens fail to adopt and carry out the Decree Monitor's remedial recommendation, it shall include in its reporting to Monitoring Counsel a description of the Decree Monitor's recommendation and its basis, and Walgreens' explanation of the specific reasons for its decision not to follow that recommendation.

    d. <u>Replacement of the Decree Monitor</u>

       i. In the event that the Decree Monitor ceases to function in that role for any reason, including leaving Walgreens' employment or reassignment to another position, Walgreens shall designate a replacement Decree Monitor as soon as practicable, but no

later than thirty (30) days after the Decree Monitor provides notice of her/his intent to cease to function in that role, or where the circumstances do not permit such advance notice, no later than thirty (30) days after the Decree Monitor ceases to function in that role.

ii.     Walgreens shall designate an individual who is qualified to perform the duties and responsibilities set forth in subsection 1.b. above, and who will effectively carry out those duties and responsibilities.  Any individual designated as a successor Decree Monitor by Walgreens shall be employed at the Director or higher level.  Regardless of the level of the successor Decree Monitor, he or she shall report directly to Walgreens' CEO on all matters pertinent to his or her duties and responsibilities under this Decree.

iii.     Within ten (10) days of Walgreens' selection of a successor Decree Monitor, Walgreens shall provide Monitoring Counsel with a description of the qualifications and relevant experience, including a resume, of the successor Decree Monitor and an opportunity to interview her or him at a reasonable time and place within thirty (30) days thereafter to discuss Walgreens' obligations under the Decree and the Decree Monitor's role in assuring Walgreens' compliance with these obligations.

e.     Resolution of a Dispute Regarding the Retention or Failure to Replace the Decree Monitor

i.     Monitoring Counsel may request the removal of an individual as the Decree Monitor, pursuant to the procedures set forth below, in the event that Monitoring Counsel believe that the individual has failed to use Best Efforts to implement and/or comply with one or more provisions of the Decree.

ii.     If Monitoring Counsel request the removal of an individual as a Decree Monitor, it shall provide the grounds for their position in detail in writing to Walgreens.  Within fourteen (14) days of the date of Monitoring Counsel's written statement, Walgreens may dispute Monitoring Counsel's position by setting forth in writing its reasons and any facts or circumstances that it believes Monitoring Counsel should consider.  The Parties shall

resolve any continuing dispute regarding the selection or retention of the Decree Monitor pursuant to the Dispute Resolution Procedures.

                       iii.     If no individual has been selected for the position of successor Decree Monitor within sixty (60) days after an individual ceases to function as a Decree Monitor, then the Special Master shall nominate a person for the Decree Monitor position subject to approval by the Court.  Walgreens and Monitoring Counsel may suggest persons for consideration by the Special Master.  Walgreens and Monitoring Counsel shall have the right to interview any nominated person before the person's nomination is reviewed by the Court and to present evidence and argument to the Court regarding the nominee's or nominees' for the Decree Monitor position.

           f.     <u>Announcement of the Decree Monitor</u>

Within fourteen (14) days of Walgreens' appointment of the Decree Monitor or any successor Decree Monitor as provided for in subsections 1.d. and e. above, Walgreens shall provide notice to all of its Store Operations' employees of the Decree Monitor's or successor Decree Monitor's appointment, including his or her name, title, and background, and a description of the Decree Monitor's job duties and responsibilities, as provided for in subsection 1.b. above.

           g.     <u>Provision of Adequate Resources to the Decree Monitor</u>

Walgreens shall provide the initially designated Decree Monitor and any successor with such support staff and funds as may be necessary to fully and effectively discharge Walgreens' and the Decree Monitor's obligations under the Decree.

         B.     <u>Implementation of Policies and Procedures for Reporting, Investigating and Addressing Individual Complaints of Race Discrimination</u>

           1.     Walgreens shall, pursuant to Section VIII.B.1. above, retain a consultant and set a schedule for the consultant to review and modify its Internal Complaint Procedures to ensure that they provide a reasonable opportunity for employees to make, and have fairly and

effectively investigated and addressed through corrective action, where warranted, complaints of Race Discrimination.

2.       Walgreens shall, in consultation with one of its consultant to be designated and retained as provided for in Section VIII.B.1. above, create and implement policies and procedures for employees to report, investigate and have addressed substantiated complaints of Race Discrimination.  At a minimum, the consultant should assess whether Walgreens' policies and procedures meet the criteria set forth below; if they do not, and if the consultant determines that meeting such criteria is necessary, he/she should make recommendations to Walgreens to adequately address the criteria, such that the policies and procedures:

a.       Are fully described (including reporting and investigation procedures and a statement of prohibition against retaliation against anyone who makes a complaint under the policies) and made readily accessible to all employees in an easily-accessible location on the Company's intranet;

b.       Encourage employees to report violations of Walgreens' policies against Race Discrimination;

c.       Provide convenient, confidential and reliable mechanisms for reporting violations of the policies against Race Discrimination, including violations of this Decree, with respect to any person's employment with the Company;

d.       Designate or create an appropriate company department or departments responsible for receiving and investigating complaints of Race Discrimination and for providing remedial relief and disciplinary action for all violations of the policies against Race Discrimination;

e.       Designate and provide detailed contact information for at least two employees in the department receiving complaints of Race Discrimination as persons who may be contacted to report violations of the policies against Race Discrimination;

        f.      Provide and publicize, in a location easily accessible to employees, a 24-hour toll-free hotline, staffed during regular business hours and recorded otherwise, for the reporting of violations of the policies against Race Discrimination;

        g.      Require all Walgreens' Store Operations' management and Employee Relations or Loss Prevention personnel who receive reports of Race Discrimination, including anonymous reports, to take such a report seriously, and to turn in such report to the department(s) responsible for receiving such complaints of Race Discrimination;

        h.      Designate multiple avenues for reporting complaints of Race Discrimination;

        i.      Allow reports of Race Discrimination to be made both orally and in writing;

        j.      Provide notice to employees that complaints of Race Discrimination may be made by using the Company's Internal Complaint Procedure and/or by filing charges of discrimination with the EEOC or state or local Fair Employment Practices ("FEP") agencies.  The notice shall also state that filing an internal complaint does not relieve the complainant of meeting any applicable deadline for filing a charge or complaint with EEOC or state or local FEP agencies.

        k.      Track reports of Covered Complaints to determine whether any systemic pattern of discrimination is occurring;

        l.      Specify, to the extent feasible, a timetable for the commencement of an investigation after a complaint is made or received, a timetable for the completion of an investigation, a timetable for the submission of written findings of the results of an investigation, and a timetable for remedial action to be taken upon conclusion of an investigation;

        m.      Require appropriate and effective investigation techniques and procedures, including but not limited to, face-to-face interviews of significant fact witnesses;

n.      Prohibit any person who is the subject of a complaint of Race Discrimination from participating in the decision-making process with respect to the resolution of the complaint;

o.      Require communication of the results of the investigation to the complaining party;

p.      Require confidential investigations and conduct interviews with employees who report Race Discrimination in such a way as to not embarrass, intimidate or harass the employee;

q.      Not impose more burdensome requirements on employees who report violations of the policies against Race Discrimination than are imposed upon employees who report comparable violations of other Company policies;

r.      Provide for appropriate remedial action to resolve complaints of Race Discrimination and to avoid further discrimination, including follow-up review to ensure adequacy of remedial actions and to prevent retaliation;

s.      Provide for disciplinary action for all violations of the policies against Race Discrimination, including but not limited to counseling, remedial measures, formal discipline, demotion, suspension without pay, or termination; and

t.      Provide a fair and expeditious system for employees to appeal Walgreens' findings and actions after investigating a report of Race Discrimination.

3.      Walgreens shall, in consultation with one of its consultant to be designated and retained as provided for and pursuant to the schedule to be set pursuant to Section VIII.B.1. above, ensure that the personnel within department(s) designated or created to receive and investigate complaints of Race Discrimination and provide remedial relief and disciplinary action for all violations of the policies against Race Discrimination are appropriately trained and equipped to carry out their duties.  At a minimum, that department, or those departments, shall:

a.      Enjoy full support from Walgreens' senior management;

b.      Be adequately staffed and funded to thoroughly carry out its duties in a timely manner;

c.      Be staffed by persons who are adequately educated and trained regarding professional human resources standards and practices for receiving and investigating complaints of discrimination and correcting, providing relief for, and disciplining violations of policies against discrimination.

d.      Be publicized on employee bulletin boards, on the Company's intranet website, at all training sessions described in Section IX.C. below, and in other places deemed appropriate by the department.

4.      Walgreens shall prepare and provide to the Decree Monitor quarterly for the first year of the Decree, and semi-annually thereafter, and to Monitoring Counsel semi-annually reports of all Covered Complaints, including the name, race, job position, District and store location of the complainant; a brief summary of the nature of the complaint; the names, race, job positions, and retail store and/or District or other locations of the subject(s) of the complaint; a brief summary of the status and nature of the investigation conducted; the final disposition of the investigation, and what, if any, corrective action was taken and/or remedial relief granted. Copies of these reports shall also be provided to the appropriate Store Operations Vice Presidents, who shall provide them, if appropriate, to the District Manager(s) for review and any appropriate action.

5.      <u>EEO Violations</u>

a.      Any supervisor or manager who is found to have personally violated Walgreens' policies concerning Race Discrimination, including but not limited to, policies with respect to store assignments, promotions, or compensation, will continue, like all Walgreens' employees, to be subject to appropriate discipline, up to and including termination of employment.

b.      Supervisors or managers who fail to respond appropriately to any substantiated complaints of Race Discrimination within their area of responsibility, including but

not limited to, store assignments, promotions, or compensation, or who fail to take appropriate actions to prevent or correct practices or instances of substantiated Race Discrimination, including but not limited to, store assignments, promotions, or compensation, shall be counseled with respect to the appropriate execution of his or her responsibility to insure compliance with the Walgreens' Policy Against Harassment and Discrimination and diversity policies (together "EEO-related responsibilities"); and the cause and substance of such counseling and by whom it was provided shall be documented, including in the supervisor's or manager's personnel file. In addition, as part of the training it is required to provide under Section IX.C. of this Decree, Walgreens shall train and direct Operations Vice Presidents, District Managers and Store Managers to consider such documented counseling for any purposes for which Walgreens uses such documentation, including but not limited to the determination of eligibility for compensation adjustments and promotions.

    C.    <u>Communication of Consent Decree Requirements to Officers and Employees</u>

No later than fifteen (15) days after the Approval Date, Walgreens shall provide to each of its officers, Operations Senior Vice Presidents, Vice Presidents, District Managers, and Pharmacy Supervisors a copy of the Summary of Consent Decree, which is attached hereto as Exhibit B, explaining Walgreens' basic duties and obligations under the Decree.

    D.    <u>Notice</u>

Within fifteen (15) days of the Approval Date, Walgreens shall post in conspicuous places where employee notices are posted in each of its stores, the Notice attached hereto as Exhibit C. The Notice shall include a provision advising employees that a complete copy of the Decree and all exhibits thereto are available from Walgreens for inspection upon request. The Notice shall remain posted for the duration of this Decree. In connection with each Compliance Report, Walgreens shall certify that the Notice has been posted and remained posted as required herein during the preceding reporting period.

     E.    <u>Training</u>

        1.    <u>Provision of Non-Discrimination Training</u>

          a.    Walgreens, under the direction of the Decree Monitor, shall provide non-discrimination training to all incumbent employees in Covered Positions, District Managers, Pharmacy Supervisors, Operations Vice Presidents, Operations Senior Vice Presidents and Senior Executive Vice President of Operations. Walgreens shall provide the training required by this Section to all individuals within one hundred eighty (180) days of the Approval Date. Walgreens shall use its Best Efforts to provide the training to all newly hired and/or newly appointed employees in Covered Positions, District Managers, Pharmacy Supervisors, Operations Vice Presidents and Operations Senior Vice Presidents within ninety (90) days of their hire or appointment date. Such training shall be mandatory.

          b.    Walgreens may provide the initial non-discrimination training in a live or on-line format.

          c.    After Walgreens provides the initial training required in subsection 1.a. above, it shall, during the Term of this Decree, provide refresher training as necessary, but no less frequently than one time during a two year period. Such refresher training may be provided in a live or on-line format.

          d.    The Decree Monitor shall be responsible for ensuring that procedures are in place to verify that all required participants receive this non-discrimination training. Walgreens shall maintain records of attendance at trainings provided for in this Section, including the names and job titles of attendees and the date(s) and subject(s) of training provided to them, during the Term of this Decree.

        2.    <u>Content of the Non-Discrimination Training</u>

     The specific training provided under this Section shall be tailored to the duties and responsibilities of the particular position(s) held by the employees being trained and shall include (depending on the position) the following subjects, and any other subjects included in such

training shall specifically incorporate EEO/diversity goals and fair employment practices considerations into their presentation in the training.

        a.     Fair, job-related, and non-discriminatory selection practices, including screening of applications, interviewing techniques and selection of applicants or candidates, proper criteria, procedures, the value of workforce (including managerial workforce) diversity, and the avoidance of bias in the assignments to stores, selection, promotion, compensation and performance evaluations of employees.

        b.     Fair, job-related, and non-discriminatory performance evaluation practices, including identification and application of proper criteria and procedures to be used, and the avoidance of bias.

        c.     Fair, job-related, and non-discriminatory practices in transfers and training leading to advancement opportunities, including screening of applications, interviewing and selection of employees, proper criteria and procedures, and interviewing techniques, the value of workforce (including managerial workforce) diversity, and the avoidance of bias.

        d.     The prohibition and avoidance of retaliation and harassment on the basis of race, including the protection required to be afforded to individuals who bring a discrimination complaint or participate in its investigation or resolution; the nature and unacceptability of actions constituting prohibited harassment; the consequences of engaging in such retaliation or harassment, including mandatory discipline up to and including termination; and the remedies required to be made available to persons found to be victims of such retaliation or harassment.

        3.     Walgreens shall, pursuant to Section VIII.B.1. above, retain a consultant and set a schedule for the consultant to review and make recommendations on its non-discrimination training program.

        4.     <u>Review of Training Effectiveness by Walgreens</u>

On an ongoing basis, Walgreens shall assess and evaluate the effectiveness of its training programs and the designers, and presenters and format of the training, in light of the purposes

and other substantive provisions of this Decree.  Walgreens shall make such adjustments or modifications of, or additions to, its selections of trainers, format of the training and the training programs themselves, as are necessary and appropriate to effectuate those purposes and other substantive provisions.  Where Walgreens makes material changes or additions to its training program or the content of the training, it shall provide notice to Monitoring Counsel no less than thirty (30) days before using the proposed adjustments or modifications in training.  Monitoring Counsel shall provide any comments to Walgreens no later than fifteen (15) days after receiving the proposed adjustments or modifications. If Monitoring Counsel do not provide a response during this time frame, Walgreens shall be entitled to presume that Monitoring Counsel have no comments on the adjustments or modifications.

      F.     <u>Management Performance Evaluation and Accountability</u>

          1.     <u>District Manager and Pharmacy Supervisor</u>

              a.     Walgreens shall, pursuant to Section VIII.B.1. above, retain a consultant and set a schedule for the consultant to  review Walgreens' current performance evaluation processes pertaining to District Managers ("DMs") and Pharmacy Supervisors ("RxSs"), and make recommendations for inclusion in the evaluation process, performance measures for the DMs and RxSs regarding:

              i.     The DMs' and RxSs' compliance with the Company's equal employment opportunity program (the "EO/ Diversity Category");

              ii.     The DMs' and RxSs' compliance with the Company's policies related to maintaining a diverse work environment free from unlawful discrimination ("Fairness Category");

              iii.     The DMs' and RxSs' accomplishments in providing African American employees equal opportunity in connection with the DMs' and RxSs' responsibility to carry out and comply with all Company selection systems such as the JOP and People Plus Hiring ("Compliance Category"); and

iv.    The DMs' and RxSs' accomplishments in providing African American employees equal opportunity in connection with the DMs' and RxSs' responsibility to develop employees in Covered Positions in their respective Districts ("Developing People Category").

b.    The evaluation reflected in the EO/Diversity Category, at a minimum, should document that the following factors were considered:  (1) the DMs' and RxSs' efforts to support the Company's equal opportunity and diversity initiatives in their respective Districts; (2) the DMs' and RxSs' good faith efforts in the areas of recruitment, development and community outreach; and (3) the DMs' and RxSs' demonstration of an ability to implement the strategies outlined in the Equal Opportunity/Diversity Scorecard and other action items to improve equal opportunity in their respective Districts.

c.    The evaluation reflected in the Fairness Category, at a minimum, should document that the following factors were considered:  (1) the DMs' and RxSs' efforts to address employee issues and concerns in a manner that is fair to the employee and the Company; and (2) the DMs' and RxSs' efforts to ensure that fair and ethical employment practices are consistently applied.

d.    The evaluation reflected in the Compliance Category, at a minimum, should document whether the DMs and RxSs use the JOP and other Company employee selection systems in a consistent manner so as to ensure equal access to employment opportunities.

e.    The evaluation reflected in the Developing People Category, at a minimum, should document that the following factors were considered, as applicable:  (1) the DMs' and RxSs' efforts to build management talent, including qualified African Americans, throughout their respective Districts via the effective use of developmental assignments for managers, and, in the case of the DMs, thoughtful promotion and deployment of EXAs and MGTs; (2) the DMs' and RxSs' efforts to encourage and support equal access for all employees, including African Americans, to mentoring, training, and career development opportunities; (3)

the DMs' efforts to prepare MGRs, including African Americans, to assume future higher-level responsibilities by, for example, assigning district-wide oversight tasks to each MGR.

            f.      Walgreens shall consider the EO/Diversity Category, Fairness Category, Compliance Category, and Developing People Category assessments, including assessments of compliance with or contribution to achieving the Promotional Benchmarks, goals and procedures set forth in this Consent Decree, in making subsequent promotion and compensation decisions for DMs and RxSs.

            2.      <u>Review of Performance Evaluation Processes Pertaining to Covered Positions</u>

            a.      Walgreens shall, pursuant to Section VIII.B.2. above, retain a consultant and set a schedule for the consultant to review and make recommendations regarding Walgreens' current performance evaluation processes applicable to MGTs, EXAs, MGRs, RPSs and RxMs.

## X.    RECORDKEEPING, REPORTING, AND COMPLIANCE MEETINGS

    A.    <u>Document Preservation</u>

The document retention obligations of this Consent Decree shall not reduce or limit in any way any record or information retention obligations that Walgreens may have pursuant to any federal, state or local law, regulation or requirement to which it is subject, or excuse Walgreens from failure to comply with such obligations. The retention obligations of this Decree are in addition to any such other obligations. Walgreens shall retain the following employment related records for the duration of the Term of this Decree or as required by state or federal law, whichever is longer:

            1.      A computer-readable database or databases containing personnel and store information for the time period covered by the Decree. The personnel and store information contained in the database or databases shall be equivalent to the computerized personnel and store information that was provided to Plaintiffs during discovery and in preparation for the Parties' settlement negotiations, but shall also contain for MGRs, EXAs, RPSs (excluding those

who are unionized), and RxMs, information on their base pay and bonuses, broken down by type of bonus.

2.     A computer readable database or databases of all Eligible Feeder Pools for the Benchmark Positions, including the names, race, and Social Security (or other unique employee identification) numbers of all employees in the Eligible Feeder Pools for each Benchmark Position and the date on which each employee entered the Eligible Feeder Pool;

3.     Documentation of all offers of promotion to Benchmark Positions declined by African Americans in Covered Positions.

4.     Performance evaluation forms for all DMs and RxSs, documenting those managers' evaluations and accountability on the "EO/Diversity Category", "Fairness Category", "Compliance Category" and the "Developing People Category."

5.     All Covered Complaints filed pursuant to Section IX.B., and the written findings of the investigations.

6.     All versions of the announcements required by Sections IX.C. and D., and a record of the date(s) on which they were distributed or posted.

7.     All policies, procedures, and programs related to, or designed to implement, the provisions of this Decree.

8.     Copies or descriptions of training programs required by this Decree and materials showing the timing, attendance, and content of such trainings.

9.     All of the records and written information (including electronically stored information) on which each Compliance Report to Monitoring Counsel pursuant to Section X.C. of this Decree or the findings and analyses underlying such Compliance Reports are based.

10.     Walgreens shall compile and retain the documentation for the specific statistical information relating to its promotion practices and their results for all personnel in Covered Positions, for each period covered by the Compliance Reports required by Section X.C. of this Decree.

B.      Access of Special Master and Monitoring Counsel to Retained Documents

1.      The records and information required to be retained under subsections A.1-10 above, shall be made available to the Special Master and Monitoring Counsel upon request and on reasonable notice and terms, if required to perform their respective obligations under the Decree.  Any disputes regarding whether a document or other information so requested by the Special Master or Monitoring Counsel is required to perform their respective obligations under the Decree shall be resolved pursuant to the Dispute Resolution Procedures.

2.      If Walgreens objects to the production of a requested document or other information on the ground that it is protected by the attorney-client privilege or attorney work product doctrine ("privileged documents"):

a.      Walgreens shall provide to the requesting party a privilege log describing the following:

i.      The date of the document.

ii.      The type of document, i.e., letter, memorandum, report or handwritten note;

iii.      The author of the document;

iv.      The recipient of the document;

v.      Individuals who received copies of the document; and

vi.      The type of privilege that is being claimed.

b.      Disputes regarding whether a document is privileged and, if so, whether the document nevertheless should be produced to Monitoring Counsel or the Special Master shall be resolved pursuant to the Dispute Resolution Procedures.

c.      The Parties agree that certain documents ordinarily considered as privileged under the attorney-client privilege or work product doctrine may be necessary for Monitoring Counsel and the Special Master to review in order to fulfill their obligations under the Decree.  For example, reports of investigations of internal employee complaints that are conducted by attorneys in Walgreens' Employee Relations Department ordinarily may be

43

protected under the attorney-client privilege or work product doctrine.  Nonetheless, such documents may be critical to Monitoring Counsel's and the Special Master's fulfillment of their duties and obligations under the Decree.  In the event that such documents are requested and are produced by Walgreens, either voluntarily or by order of the Special Master, the Parties agree that (i) such production does not constitute a waiver of such privileges for any other purpose or with respect to any third parties; (ii) Monitoring Counsel and the Special Master will not disclose those documents to any other parties without Walgreens' written consent and if they wish to file such documents with the Court pursuant to the Dispute Resolution Procedures of this Decree will do so subject to an appropriate protective order and under seal; and (iii) Walgreens' production of such documents may not be used by any third party seeking discovery of such documents in any other forum.

        d.      The Parties agree that Walgreens may claim as privileged and need not produce documents that are prepared by Walgreens' counsel for the purpose of monitoring Walgreens' compliance with the terms of the Decree.

        3.      Except for summaries of the compliance reports, as set forth in Section X.C. 2 below, all documents required to be maintained by the express terms of the Decree, and all documents that are provided to the Special Master, Monitoring Counsel, Class Counsel or the EEOC under the terms of the Decree, are, and shall be treated as, confidential business records. Neither the Special Master, Monitoring Counsel, Class Counsel nor the EEOC shall divulge any such documents to any third party without Walgreens written consent to such disclosure, unless so ordered by the Court after notice to Walgreens and an opportunity for Walgreens to object to such disclosure and be heard.  This provision shall not prevent a party from filing otherwise confidential documents with the Court, provided that, either (a) such documents are filed under seal, or (b) Monitoring Counsel give ten (10) days advance notice to Walgreens, to permit it the opportunity to seek a protective order sealing such documents.

C.    Compliance Reports

1.    Contents of Compliance Reports

Walgreens shall produce to Monitoring Counsel the Compliance Reports required by this Section within sixty (60) days after the six-month anniversary of the Approval Date and at six (6) month intervals thereafter for the first two (2) years of the Term of the Decree, and then annually thereafter, summarizing and documenting its compliance activities and results for the period listed.  Walgreens' Compliance Reports shall provide information showing:

a.    The number of candidates in Eligible Feeder Pools for promotion, by race, for each of the Benchmark Positions in each District and Region.

b.    The number of persons selected, by race, for promotions to each of the Benchmark Positions in each District and Region.

c.    The number of persons, by race, who were offered, but declined, promotions to each of the Benchmark Positions in each District and Region.

d.    The number of white, African American and other persons employed in each of the Covered Positions as of the end of the reporting period.

e.    The store assignment analyses required by Section VIII.E.2. above, and all data utilized in performing the analyses in machine readable form (to be provided annually).

f.    The compensation analyses required by Section VIII.F. above, and all data utilized in performing the analyses in machine readable form (to be provided annually).

g.    Other data required to perform Monitoring Counsel's obligations under this Decree, upon request by Monitoring Counsel and on reasonable notice and terms. Any disputes regarding whether data so requested by Monitoring Counsel is required to perform their obligations under the Decree shall be resolved pursuant to the Dispute Resolution Procedures.

h.      Any changes or additions to policies, procedures, standards, minimum qualifications, or other matters adopted or maintained pursuant to the provisions of this Decree.  Information submitted on any such changes or additions shall include the reason(s) for such modifications and the methods used in determining their content, as well as a description of the modification itself.

i.      A summary of all training activities required by or undertaken pursuant to this Decree, including the dates, subjects, duration, and attendance at such training activity.

j.      A summary of the information regarding Covered Complaints of discrimination required to be maintained and provided under Sections IX.B.4 and X.A.5.

2.      <u>Summary of Compliance Reports</u>

a.      The Decree Monitor shall prepare and provide to Monitoring Counsel with each Compliance Report, a summary which shall include, at a minimum:

i.      Walgreens' results in achieving the Promotional Benchmarks during the reporting period;

ii.      Any changes or addition to policies, procedures, standards, minimum qualifications or other matters adopted or maintained pursuant to the provisions of this Decree;

iii.      All training activities required by or undertaken pursuant to this Decree;

iv.      Information concerning Covered Complaints; and

v.      Any other significant information necessary to demonstrate or evaluate Walgreens' overall compliance with the provisions of the Consent Decree.

b.      Monitoring Counsel may request Walgreens to include additional information in the summary, if they believe that the Decree Monitor's summary report does not fairly reflect the Compliance Report.

c.       If Walgreens objects to including the additional material requested by Monitoring Counsel, the Parties shall utilize the Dispute Resolution Procedures of this Decree.

3.       The summaries of the Compliance Reports referred to in Paragraph 2, above, shall be treated as confidential business records by all Monitoring Counsel except for EEOC.  In making any public statement regarding the summaries of the Compliance Reports, EEOC shall only disclose the information contained in the summary report or a copy thereof. Additionally, EEOC agrees to provide Walgreens with a 24-hour advance copy of any public statement it intends to make regarding the summary reports.

D.       Compliance Meetings

1.       Within forty-five (45) days of the submission of the initial Compliance Report and after each Compliance Report submitted thereafter, representatives of Walgreens and Monitoring Counsel shall confer in order to review Walgreens' implementation of the Decree, the Compliance Report, Walgreens' compliance with the requirements of the Decree, and other related topics.  Such meetings shall be in person if requested by either Monitoring Counsel or Walgreens.

2.       The Decree Monitor will attend each Compliance Meeting.  Other officers, managers, and employees of Walgreens, whose presence is needed in order to achieve the purpose of the Compliance Meetings, may attend as appropriate.  In-person Compliance Meetings shall take place in or within 30 miles of Chicago or East St. Louis, Illinois, unless the Parties agree on another location.

XI.     MONETARY RELIEF FOR PLAINTIFFS AND CLASS MEMBERS

A.       Establishment of Settlement Fund

1.       Walgreens shall establish a settlement fund (the "Fund" or the "Settlement Fund") in the amount of Twenty Four Million Four Hundred Seven Thousand Five Hundred Dollars ($24,407,500) for the purpose of providing individual monetary awards to Class Representatives, Plaintiff-Intervenor, and other eligible members of the Settlement Class, and

payment of attorneys' fees and costs to Class Counsel and Plaintiff-Intervenor's counsel, in accordance with the provisions of this Section and Section XII.  Walgreens shall guarantee interest on unpaid balances of the Settlement Fund at the rate of 6% per annum commencing ten (10) days after the Preliminary Approval Date.  Such interest shall accrue until such funds are actually paid, but for no longer than six (6) months for the portion of the fund attributable to attorneys' fees and costs and no more than twelve (12) months on the remaining balance.

2.      Settlement Services, Inc. or SSI shall serve as the Settlement Administrator.  Within three (3) days of the Preliminary Approval Date, the Settlement Administrator will open an interest-bearing account ("Settlement Fund Account") with a unique Taxpayer Identification Number.

3.      Within seven (7) days of the Preliminary Approval Date, Walgreens will direct the wire transfer of One Hundred and Twenty Five Thousand Dollars ($125,000) to the Settlement Fund Account.  This amount is intended to cover costs of the mailed notices and expenses associated with the Allocation Plan and Monetary Award Procedure, as set forth below in Sections C. and D.

4.      If there is no Final Approval of the Consent Decree, the Settlement Administrator shall return to Walgreens any funds, including any interest accrued thereon, remaining in the Settlement Fund Account.

B.      Payment of the Settlement Fund

After Final Approval, Walgreens shall direct the wire transfer to the Settlement Administrator of all remaining amounts in the Settlement Fund, including all interest accrued, for deposit to the Settlement Fund Account.  Walgreens shall make this wire transfer of funds at least ten (10) days prior to the date specified by the Settlement Administrator as the date by which the Settlement Administrator will be prepared to begin distribution of the Settlement Fund pursuant to this Decree.  The Settlement Administrator shall give Walgreens written notice of that date at least fifteen (15) days prior to the specified date.  This amount shall be deposited to

the Settlement Fund Account, and thereafter distributed, by the Settlement Administrator as follows:

1.     Class Representatives, Plaintiff Wafford, and Plaintiff-Intervenor

Each Class Representative and Plaintiff Wafford (collectively referred to as "Plaintiffs" in the remainder of this paragraph) shall be entitled to an enhancement award as set forth on Exhibit D.  The aggregate gross amount of these payments is Three Hundred Sixty Six Thousand Five Hundred Dollars ($366,500).  These payments reflect:  (a) the Plaintiff's assumption of the risks and potential liability related to being a Plaintiff, including the potential liability for Defendant's taxable legal costs had Defendant litigated the action to a favorable judgment; (b) the Plaintiff's assistance to Class Counsel and his/her expenditure of substantial time and effort related to this class action litigation; and (c) the Plaintiff's waiver of individual claims that were asserted or could be asserted in his/her EEOC Charge and/or the Tucker action outside the scope of the class claims addressed in this Consent Decree.  These payments shall be in addition to payments that will be made to the Plaintiffs as members of the Class pursuant to the Allocation Plan set out in Section C below.  The Settlement Administrator shall make payment to each Plaintiff in the amounts specified on Exhibit D, less applicable deductions, no later than sixty-five (65) days after the Approval Date, assuming no appeal from the Court's Final Approval Order is pending.

Plaintiff-Intervenor shall be entitled to an enhancement award in the amount of $52,500.  This payment reflects:  (a) the Plaintiff-Intervenor's assumption of the risks and potential liability related to bringing an action, including the potential liability for Defendant's taxable legal costs had Defendant litigated the action to a favorable judgment; (b) the Plaintiff-Intervenor's assistance to the EEOC and her expenditure of substantial time and effort related to EEOC's litigation; and (c) the Plaintiff-Intervenor's waiver of individual claims that were asserted or could be asserted in her action outside the scope of the class claims addressed in this Consent Decree.  These payments shall be in addition to payments that will be made to the Plaintiff-Intervenor as a member of the Class pursuant to the Allocation Plan set out in Section C

below.  The Settlement Administrator shall make payment to the Plaintiff-Intervenor in the amount specified above, less applicable deductions, no later than sixty-five (65) days after the Approval Date, assuming no appeal from the Court's Final Approval Order is pending.

### 2.    Charging Parties and Individually Represented Class Members

Each Charging Party and Class Members represented individually by Class Counsel, who do not opt out, shall be entitled to an enhancement award as set forth on Exhibit E.  The aggregate gross amount of these payments, assuming no such Charging Party or Class Member represented individually by Class Counsel opts out, is Thirty Four Thousand Dollars ($34,000). These payments reflect these individuals' assistance to EEOC and/or Class Counsel and their expenditure of time and effort related to this class action litigation.  These payments shall be in addition to payments that will be made to these individuals as members of the Class pursuant to the Allocation Plan set out in section C below.  The Settlement Administrator shall make payment to each Charging Party and Class Member represented individually by Class Counsel in the amounts specified on Exhibit E, less applicable deductions, no later than sixty-five (65) days after the Approval Date, assuming no appeal from the Court's Final Approval Order is pending.

### 3.    Retaliation Claims of Plaintiff Tucker

This Consent Decree does not resolve the claims asserted by Plaintiff Tucker in his charge alleging retaliation, filed with EEOC on or about October 17, 2006,.  Nothing herein shall be taken to waive, release, or otherwise affect those claims or Walgreens' defenses thereto, all of which are reserved for further proceedings.

### 4.    Attorneys' Fees and Costs of Class Counsel

Five Million Five Hundred Fifty Thousand Dollars ($5,550,000) of the Monetary Settlement Fund shall be allocated to payment of Class Counsel's attorneys' fees and costs pursuant to Section XII. below.  In addition, Forty Thousand Dollars ($40,000) of the Monetary Settlement Fund shall be allocated to payment of Plaintiff-Intervenor's attorney's fees and costs.

5.    Payment of Settlement Administrator's Fees

All fees, costs and expenses, if any, of the Settlement Administrator in excess of the One Hundred Twenty Five Thousand Dollars ($125,000) advanced by Walgreens to the Settlement Administrator as provided for in Section A.3. above, shall be paid from the Settlement Fund Account, including the interest on the Settlement Fund Account.  All such payments to the Settlement Administrator shall be approved in advance by Monitoring Counsel.

6.    Settlement Class

The remainder of the Settlement Fund Account ("Net Settlement Fund") will be distributed to eligible members of the Settlement Class who do not opt out based on the Allocation Plan and Monetary Award Procedure, as set forth below in Sections C and D.  The distribution of the Settlement Fund Account according to the Allocation Plan will be the Settlement Administrator's responsibility, subject to the Monetary Award Procedure set forth in Section D below.  The Settlement Administrator shall complete this distribution as soon as practicable, but in no event shall any distributions be made prior to sixty-five (65) days after the Final Approval Date, assuming no appeal from the Court's Final Approval Order is pending.

C.    Allocation of the Net Settlement Amount by Categories of Recovering Class Members

The allocation of proportionate shares and payments from the Net Settlement Fund for Class Members who held Covered Positions and/or worked in Listed Stores were determined based on the estimates by Class Counsel and the EEOC of the relative amounts of lost earnings and damages incurred by Class Members in each Covered Position  and/or each of the Listed Stores during the Class Period as a result of the allegedly discriminatory practices described in the Plaintiffs' Second Amended Complaint and the EEOC's Complaint.

1.    Twenty-three and thirty-one hundredths percent (23.31%) of the Net Settlement Amount shall be apportioned to Class Members who at any time during the Class Period held the position of Store Manager.  Each Store Manager Class Member who does not opt out shall be individually allocated his or her proportionate share of the amount specified in this

subparagraph based on the total number of days he or she worked as a Store Manager during the Class Period.

      2.    Thirteen and seventy-seven hundredths percent (13.77 %) of the Net Settlement Amount shall be apportioned to Class Members who at any time during the Class Period held the position of Executive Assistant Manager. Each Executive Assistant Manager Class Member who does not opt out shall be individually allocated his or her proportionate share of the amount specified in this subparagraph based on the total number of days he or she worked as an Executive Assistant Manager.

      3.    Fourteen and four hundredths percent (14.04 %) of the Net Settlement Amount shall be apportioned to Class Members who at any time during the Class Period held the position of Management Trainee position for a minimum of two hundred seventy (270) days. Each Management Trainee Class Member who does not opt out shall be individually allocated his or her proportionate share of the amount specified in this subparagraph based on the total number of days in excess of 270 days, that he or she worked as a Management Trainee during the Class Period.

      4.    Seventeen and thirty-one hundredths percent (17.31 %) of the Net Settlement Amount shall be apportioned to Class Members who at any time during the Class Period held the position of Pharmacist. Each Pharmacist Class Member who does not opt out shall be individually allocated his or her proportionate share of the amount specified in this subparagraph based on the total number of days he or she worked as a Pharmacist during the Class Period.

      5.    Eleven and four hundredths percent (11.04 %) of the Net Settlement Amount shall be apportioned to Class Members who at any time during the Class Period held the position of Pharmacy Manager. Each Pharmacy Manager Class Member who does not opt out shall be individually allocated his or her proportionate share of the amount specified in this subparagraph based on the total number of days he or she worked as a Pharmacy Manager during the Class Period.

6.     Twenty and fifty-three hundredths percent (20.53%) of the Net Settlement Amount shall be apportioned to Class Members who at any time during the Class Period worked in any of the Listed Stores for the periods of time so designated on the Listed Stores List that shall be lodged with the Court and available on the internet at www/walgreensracecase.com within fourteen (14) days of the Preliminary Approval Date.  Each such Class Member who does not opt out shall be individually allocated his or her proportionate share of the amount specified in this subparagraph based on the total number of days he or she worked in Listed Store during the Class Period.

7.     Class Members who held more than one Covered Position or who worked in one or more of the Listed Stores during the Class Period are entitled to aggregated awards based on their proportionate share amounts as provided by subsections C.1-6 above.

D.     <u>Procedure for Distribution of the Settlement Fund</u>

The remainder of the Settlement Fund, after allocation of the amounts specified in subsections B. 1-5 above ("the Net Settlement Amount"), shall be distributed to Class Members by the procedure set forth in this Section.

1.     Within fourteen (14) days from the Preliminary Approval Date, Walgreens shall provide the Settlement Administrator the identity of all Class Members eligible to recover monetary awards from the Net Settlement Fund, including their full names, current or last known addresses, telephone or other contact numbers, and social security numbers, for the Settlement Administrator's use in sending notices and payments to Class Members as specified herein.  At the same time, Walgreens shall also produce to the Settlement Administrator, in computer readable format, all personnel and payroll records of all Class Members necessary for the Settlement Administrator to determine the proportionate shares of all Class Members for all Covered Positions.  Walgreens shall also provide an identical copy of such data to Monitoring Counsel.

2.    The Settlement Administrator shall provide a list of all Class Members' proportionate shares to Walgreens, and Monitoring Counsel within fifteen (15) days after Walgreens provides it with the records specified in subparagraph X.D.1 above.

3.    At the same time, the Settlement Administrator will print a Calculation of Estimated Settlement Share Form for each Class Member showing the Class Member's individual calculations, along with the dates of employment in each Covered Retail and Pharmacy Position and in any of the stores listed on the Listed Stores List, as identified in Section XI.C.6 above.

4.    The Notice of Proposed Class Action Settlement and Hearing Date for Court Approval ("Notice") as shall be provided for by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, shall have attached to it a Calculation of Estimated Settlement Share Form, prepared by the Settlement Administrator as specified in subsection 3 above, informing Class Members of the information used to calculate their estimated payments from the Net Settlement Amount and their individual Estimated Settlement Share Amount, both of which shall be included on an Estimated Settlement Amount Form ("Settlement Award Form"), in the form of Exhibit F to this Consent Decree.

5.    Class Members shall not be required to respond or take any action with respect to the Settlement Award Form in order to receive their Estimated Settlement Amount, or any adjustment necessary to be made to the amount by the Settlement Administrator due to successful challenges or otherwise, as provided for herein.

6.    However, should Class Members wish to challenge their Estimated Settlement Amounts in order to correct errors in information used to calculate their estimated pro rata share of the Net Settlement Amount and/or to seek additional amounts, they must submit such challenge and request for correction of errors in information used to calculate their estimated pro rata share of the Net Settlement Amount and/or additional payment ("Challenge") in writing to the Settlement Administrator in a timely manner as specified herein.

7.     Each Class Member will have the right to present a Challenge to the dates of employment in Covered Positions and/or Listed Stores or other information used in the computation of that individual's award as specified in subsection 3 above.  However, Class Members shall not have the right to raise any other claims or contentions in Challenges pursuant to this provision.

8.     Class Members must send their written Challenge to their Estimated Settlement Amount Form as well as any applicable documentation to the Settlement Administrator, postmarked by no later than thirty (30) days after the date of the Notice ("Challenge Filing Deadline").

9.     The Settlement Administrator shall retain all of the job history information or other electronic data pertaining to Class Members received from Walgreens from which the Settlement Administrator determined the Class Members' proportionate share numbers as specified above.  Walgreens shall respond to a request by the Settlement Administrator for additional information the Settlement Administrator determines to be necessary to respond to a Class Member's Challenge, within fourteen (14) days of such request.

10.     The Settlement Administrator shall attempt to expeditiously resolve each such Challenge within thirty (30) days after receipt of such Challenge.  Challenges to the computation of settlement shares will be resolved without hearing by the Settlement Administrator.  The Settlement Administrator's decision shall be communicated to the Class Member in writing and shall be final, binding and nonappealable.

11.     The Settlement Administrator shall be available through the toll-free line and via e- mail through the Settlement Website to respond to Challenges and questions from Class Members.

12.     <u>Distribution of the Monetary Awards</u>

As soon as practicable after making the calculations required by the Sections D.1-3 above, and resolution of all Challenges pursuant to Sections D.6-10 above, but in no event less than sixty-five (65) days after the Approval Date, the Settlement Administrator shall distribute

the monetary awards to Class Members via first class mail. The Settlement Administrator shall only issue the check(s) in the name of the Class Members unless Section D.16. below, is applicable. The Settlement Administrator will include with the check due to the Class Member a statement showing the gross amount of the payment(s) and an itemized statement of all deductions made. Appropriate deductions from gross amounts that are determined to be wage payments will be made for federal and state income taxes, the employee's share of social security and Medicare taxes, and any local income or payroll taxes that apply. Any amounts designated as interest shall not be subject to withholdings and shall be reported, if required, to the IRS on Form 1099-INT. Any amounts paid for emotional distress shall not be subject to withholdings and shall be reported to the IRS on Form 1099-MISC. Any amounts designated as lost wages or payments in lieu of wages shall be subject to payroll tax withholding deductions and shall be reported to the IRS on Form W-2.

13.    Tax Withholdings and Reporting

The Settlement Administrator will inform Walgreens of the employer's share of all taxes or contributions (i.e., matching social security, Medicare or other required withholding or payroll taxes) required to be paid by Walgreens, and Walgreens shall timely remit all such payments to the Settlement Administrator for payment to appropriate taxing authorities. The Settlement Administrator will be responsible for preparing and filing all appropriate tax filings and reports (except for any unemployment compensation taxes that may be due, which will be the sole responsibility of Walgreens to calculate and pay), including, but not limited to, W-2 and 1099 forms for all Plaintiffs, Charging Parties, and Class Members for their payments from the Settlement Fund, as well as any required for the Settlement Fund. The Settlement Administrator will be responsible for reporting and remitting to the appropriate taxing authorities the employer's share of taxes or contributions required to be paid by Walgreens in a timely manner after receipt of the amount due for those payments from Walgreens.

14.    Undeliverable Checks

Any checks returned as undeliverable shall be voided and the amount of the check shall be included in the funds re-distributed pursuant to Section C.17. below.

15.    Allocation of Monetary Awards to Interest, Damages, and Lost Earnings

The monetary awards to Class Members based on time worked in any of the Covered Positions and Listed Stores shall be allocated as follows:  (i) an amount for interest to be determined by the Settlement Administrator based on the dates of employment for which such monetary awards are made, using standard rates and techniques, and (ii) 15.0% of the remainder to lost wages and 85.0% to compensatory damages.

16.    Deceased Settlement Class Members

Any allocation paid to a deceased Class Member shall be made payable to the estate of the deceased Class Member upon timely receipt by the Settlement Administrator of proper written proof of the estate's entitlement to receive the deceased Class Member's assets.

17.    Distribution of Remaining Funds

It is the intention of the Parties to completely distribute the funds in the Settlement Fund Account.  In the event that Class Members entitled to participate in the monetary settlement opt out of the monetary settlement or cannot be located by the Settlement Administrator, mailed checks are returned as undeliverable, delivered checks are not cashed within one hundred twenty (120) days of their mailing, and/or that the Settlement Fund is not completely distributed for any other reason (other than denial of Final Approval), the remaining undistributed sum shall be re-distributed in the following order:  (1) to make any additional payments to Class Members occasioned by mistakes in the calculations of their tenure in a particular Covered Position and/or Listed Store, or other errors or omissions of Walgreens or the Settlement Administrator; (2) to reimburse Walgreens for the $125,000 it advanced to pay for administrative costs pursuant to Section A. 3. above; and (3) as a Cy Pres Fund to be distributed to a non-profit organization or organizations designated by the Parties that assist African Americans to obtain equal

employment opportunity.  In the event the Parties cannot agree on a beneficiary(-ies) of the Cy Pres Fund, the Special Master shall designate one or more such beneficiary(-ies).

  18. <u>Report from Settlement Administrator</u>

  Within thirty (30) days of the final distribution of the monies from the Settlement Fund, the Settlement Administrator shall furnish an accounting of all distributions from the Settlement Fund to the Court with copies to Monitoring Counsel and Walgreens.

  E. <u>Notice</u>

  1. Within thirty (30) days following the Settlement Administrator's receipt from Walgreens of the data and information required to be provided by Section D.1 above, the Settlement Administrator shall determine to the greatest extent possible, through a computer change of address or other database search, the most recent address that may be obtained for each Class Member.  Within forty-five (45) days of the Preliminary Approval Date, or during the period five (5) to ten (10) days after the completion of Walgreens' biannual managers' meeting scheduled for August 2007, whichever is later, the Settlement Administrator shall mail, via first class postage, Notice of Proposed Class Action Settlement and Hearing Date for Court Approval in the form approved by the Court in the Preliminary Approval Order to all known Class Members, and shall in addition enclose individual Calculation of Estimated Settlement Share Forms to all known Class Members who are eligible to recover monetary awards from the Net Settlement Fund, at the most recent address that may have been obtained through the Settlement Administrator's computer database search.

  F. <u>Objections and Exclusions</u>

  Class Members may object to or opt-out of the class settlement.

  1. <u>Objections</u>

  Class Members objecting to the terms of the settlement must do so in writing at least thirty (30) days prior to the scheduled Final Fairness Hearing.  The written objection must be sent to the Settlement Administrator and postmarked on or before the date specified in the Preliminary Approval Order.  The Settlement Administrator shall date stamp the original of the

objection and forward a copy of the objection to both Walgreens and Class Counsel within two (2) business days following receipt. The Settlement Administrator will file the original objections with the Clerk of the Court no later than five (5) business days prior to the scheduled Final Fairness Hearing. The Settlement Administrator shall retain copies of all written objections until such time as it has completed its duties and responsibilities under this Decree.

   2. <u>Exclusions</u>

   Class Members may exclude themselves, or opt-out, of the monetary relief provisions of the class settlement. Any request for exclusion must be in the form of a written "Opt-out" statement sent to the Settlement Administrator. Information on how to opt-out of the settlement shall be made available to Class Members by the Settlement Administrator upon request. A person wishing to opt-out must sign a statement which includes the following language:

> "I understand that I am requesting to be excluded from the class monetary settlement and that I will receive no money from the settlement fund created under the Consent Decree entered into by Walgreens. I understand that if I am excluded from the class monetary settlement, I may bring a separate legal action seeking damages, but may receive nothing or less than what I would have received under the class monetary settlement in this case. I also understand that I may not seek exclusion from the class for injunctive (non-monetary) relief and that I am bound by the injunctive provisions of the Consent Decree entered into by Walgreens."

   3. A Class Member submitting an Opt-out statement shall sign and date the statement and send it to the Settlement Administrator postmarked no later than thirty (30) days prior to the scheduled Final Fairness Hearing, as specified in the Preliminary Approval Order. The Settlement Administrator shall date stamp the original of any Opt-out statement and serve copies on both Walgreens and Class Counsel within two (2) business days of receipt of such statement. The Settlement Administrator will file the original Opt-out statements with the Clerk of the Court no later than five (5) business days prior to the scheduled Final Fairness Hearing. The Settlement Administrator shall retain copies of all Opt-out statements until such time as it has completed its duties and responsibilities under this Decree.

   4. <u>Rescission of Class Member Opt–Outs</u>

59

The Parties recognize that some Class Members who initially submit Opt-out forms seeking exclusion may, upon further reflection, wish to withdraw or rescind such Opt-out statements. The Parties agree that Class Members shall be permitted to withdraw or rescind their Opt-out statements by submitting a "Rescission of Opt-out" statement to the Settlement Administrator. The Rescission of Opt-out statement shall include the following language:

> "I previously submitted an Opt-out statement seeking exclusion from the class monetary settlement. I have reconsidered and wish to withdraw my Opt-out statement. I understand that by rescinding my Opt-out statement I may be eligible to receive an award from the claims settlement fund and may not bring a separate legal action against Walgreens seeking damages."

5.     A Class Member submitting such a rescission statement shall sign and date the statement and cause it to be delivered to the Settlement Administrator no later than ten (10) calendar days prior to the date of the Final Fairness Hearing. The Settlement Administrator shall date stamp the original of any Rescission of Opt-out statement and immediately fax copies to Walgreens and Class Counsel no later than the next business day after receipt thereof and shall file the date-stamped originals with the Clerk of the Court no later than five (5) business days prior to the date of the Final Fairness Hearing. The Settlement Administrator shall retain copies of all Rescissions of Opt-Out statements until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Decree.

G.     No Solicitation of Objections or Exclusions

The Parties and their counsel shall not seek to solicit or otherwise encourage Class Members to submit written objections to the Consent Decree or request exclusion from the Settlement Class, or to appeal from the Court's final judgment in this action.

H.     Defendant's Rescission of Agreement

If any of the Named Plaintiffs opt out or if the number of Class Members who opt-out of the Settlement Class in the manner provided for in this Decree exceeds 1% of the number of Class Members, then Walgreens, at its sole option, shall have the right to void this settlement within seven (7) days after the date the Court allows the submission of rescissions of opt-outs. If

Walgreens exercises this option, all of Walgreens' obligations under this Decree shall cease to have any force or effect and any orders entered in connection therewith shall be vacated, rescinded, cancelled, and annulled, and the Parties shall return to the status quo in the litigation as if the Parties had not entered into the Consent Decree.  In addition, in such event, the Consent Decree and all negotiations, court orders and proceedings related thereto shall be without prejudice to the rights of any and all Parties hereto, and evidence relating to the Consent Decree and all negotiations shall not be admissible or discoverable in the litigation or otherwise.

      I.      <u>Settlement Administrator's Duties and Responsibilities</u>

      The Settlement Administrator shall:  (1) trace all Class Member addresses for current addresses; (2) calculate the pro rata payments of Class Members; (3) prepare and mail the Notice of Proposed Class Action Settlement and Hearing Date for Court Approval and individual Calculation of Estimated Settlement Share Forms to Class Members; (4) establish and operate a website and maintain a toll-free number designed to provide information to and communication with Class Members; (5) determine challenges submitted by Class Members to the accuracy of individual Calculation of Estimated Settlement Shares; (6) seek additional information from Class Members, Monitoring Counsel or Walgreens, when appropriate or necessary; (7) receive and file opt-out statements, objections and rescissions of opt-out statements; (8) implement the Allocation Plan and Monetary Award Procedures; (9) respond to questions from Class Members; and (10) perform any other duties necessary to carry out its responsibilities as set forth in this Decree.

## XII.   ATTORNEYS' FEES, COSTS AND EXPENSES

      A.      <u>Basis for Award of Fees, Costs and Expenses</u>

      1.      The Parties have agreed that as part of the settlement underlying this Consent Decree, Walgreens will pay to Class Counsel, on behalf of the Plaintiffs and the Settlement Class, reasonable attorneys' fees, litigation expenses, and costs in this case.

      2.      Walgreens has agreed to pay Class Counsel an award of reasonable attorneys' fees, litigation expenses, and costs in the amount of Five Million Five Hundred Fifty

Thousand Dollars ($5,550,000) for work performed and costs and expenses incurred through and including the Approval Date. Included in this amount is approximately Nine Hundred Thousand Fifty Dollars ($950,000) for litigation costs and expenses incurred by Class Counsel. This amount fully satisfies any obligation Walgreens may have to pay attorneys' fees, litigation expenses, and costs for and on behalf of the Plaintiffs and the Settlement Class for any and all work performed and costs and expenses incurred through and including the Approval Date. The attorneys' fees and costs being paid to Class Counsel as provided for in this section will be paid from the Class Monetary Fund.

3.    Walgreens has also agreed to pay Plaintiff-Intervenor's counsel Forty Thousand Dollars ($40,000) for costs and attorneys' fees incurred in representation of Plaintiff-Intervenor in her action. This amount fully satisfies any obligation Walgreens may have to pay attorneys' fees, litigation expenses, and costs for and on behalf of the Plaintiff-Intervenor. The attorneys' fees and costs being paid to Plaintiff-Intervenor's counsel as provided for in this section will be paid from the Class Monetary Fund.

B.    Date for Payment

The Settlement Administrator shall pay Class Counsel their respective portions of the award of costs and fees, as they shall jointly direct, sixty-five (65) days after the Final Approval Date, assuming no appeal from the Court's Final Approval Order is pending. The Settlement Administrator shall also pay Plaintiff-Intervenor's counsel the amount of fees and costs specified above sixty-five (65) days after the Final Approval Date, assuming no appeal from the Court's Final Approval Order is pending.

C.    Monitoring Fees

1.    Walgreens also has agreed to pay to Goldstein, Demchak, Baller, Borgen & Dardarian ("Goldstein Demchak") an amount of reasonable attorneys' fees, litigation expenses and costs for work it will be required to perform as one of the monitoring counsel pursuant to this Decree after the Approval Date. Walgreens agrees that it will pay Goldstein Demchak such fees, expenses and costs in the amount of Three Hundred Twenty Five Thousand Dollars

($325,000) for the first four (4) years of the Decree, and Fifty Thousand Dollars ($50,000) for the fifth year of the Decree, if the Decree is not terminated after four (4) years.  Within thirty (30) days of the Preliminary Approval Date, Walgreens and Goldstein Demchak shall agree to a schedule of payment of the fees, expenses and costs for the first four (4) years of the Decree.

      2.    Walgreens also agrees that Goldstein Demchak may apply to the Court for payment of additional fees, expenses or costs for good cause shown.

      3.    The fees, expenses and costs to be paid by Walgreens under this subsection will be those incurred by Goldstein Demchak relating to defense of the Decree, and monitoring, evaluating and enforcing Walgreens' administration and implementation of, and compliance with, this Decree.

      4.    Except as provided in Section VII.F above, for appeals of decisions of the Special Master and as provided for in subsection 2 above, the amounts reflected in subsection 1 above, satisfy any arguable obligation Walgreens may have to pay attorneys' fees, expenses and costs to Goldstein Demchak for any and all work performed in monitoring and enforcing this Decree.

## XIII.  MISCELLANEOUS PROVISIONS

A.    <u>No Admission of Liability</u>

This Decree represents the compromise of disputed claims that the Parties and the Plaintiff-Intervenor recognize would require protracted and costly litigation to determine. Walgreens denies that it has engaged in any policy, pattern or practice of unlawful discrimination against African Americans as alleged in the Plaintiffs' Second Amended Complaint, the EEOC's Complaint, and Plaintiff-Intervenor's Complaint, and Walgreens' entry into this Decree is not, and may not be used by any person as an admission or evidence that Walgreens has, on any occasion, engaged in discriminatory employment practices, such being expressly denied. Walgreens has voluntarily entered into this Decree because the actions it has agreed to undertake underscore its strong commitment to diversity and equal employment opportunity.

B.    <u>Duty to Support and Defend the Decree</u>

The Plaintiffs, Class Counsel, EEOC, Plaintiff-Intervenor and Walgreens each agree to abide by all of the terms of this Decree in good faith and to support it fully, and shall use Best Efforts to defend this Decree from any legal challenge, whether by appeal or collateral attack.

C.     Calculation of Time

Unless otherwise stated, computation or calculation of any period of time prescribed or allowed by the Decree shall be made consistent with Federal Rule of Civil Procedure 6(a) as it exists at the time of issue.

D.     The Decree is Binding on the Parties and their Successor and Assigns

The terms of this Decree shall be binding on the Plaintiffs, EEOC, Plaintiff-Intervenor, Class Members, Walgreens, and their respective successors and assigns.

E.     The Consent Decree Is The Complete Understanding of the Parties

This Decree constitutes the complete understanding among the Parties and Plaintiff-Intervenor with respect to the matters herein.  Only those obligations expressly set forth in this Decree may be imposed on any party.  No additional obligations may be imposed or implied.

F.     Interpretation and Severability of Decree

Whenever possible, each provision and term of this Decree shall be interpreted in such a manner as to be valid and enforceable.  In the event that after Final Approval, any provision or term of this Decree should be determined unenforceable on collateral review, all other provisions and terms of this Decree and the application of the Decree to all persons and circumstances as provided by the Decree shall remain unaffected to the extent permitted by law.  If the application of any provision or term of this Decree to any specific person or circumstance should be determined to be invalid or unenforceable, the application of such provision or term to other persons or circumstances shall remain unaffected to the extent permitted by law.

G.     Modification of Decree

The Parties may modify this Decree only by written agreement among them executed by their authorized representatives, filed with and approved by the Court.  Any such modification shall not become binding until it receives the Court's approval, but may, upon the Parties'

written agreement and subject to the Court's approval, be made effective as of the date of the Parties' execution of such agreement or other date prior to the date the Court approves the proposed modification.

      H.      Execution of Decree

The Parties and Plaintiff-Intervenor may execute this Decree in counterparts. The Decree shall be effective upon the execution of a counterpart by all Parties and Plaintiff-Intervenor. After each party has executed a copy of the Decree, the Parties and Plaintiff-Intervenor shall exchange executed copies, and a copy of this Decree together with executed signature pages from all Parties and Plaintiff-Intervenor shall constitute a complete and binding Decree.

      I.      Return or Destruction of Documents

Upon the expiration of this Decree, Plaintiffs, Class Counsel the EEOC, and Plaintiff-Intervenor shall expeditiously return to Walgreens all documents (other than those filed with the Court or otherwise matters of public record), including any computerized materials, that they received from Walgreens during the course of mandatory disclosures, discovery or settlement negotiations in this case. The materials to be returned under this provision include any documents and computerized materials in the possession of any third party who received such materials from Class Counsel and/or EEOC. In the alternative, Class Counsel, the EEOC and Plaintiff-Intervenor's counsel shall destroy all such documents and materials, and provide written assurance to Walgreens within sixty (60) days of the expiration of the Decree that such documents and materials have been destroyed. However, under either alternative, Class Counsel and EEOC may retain one copy of each document or other written or electronic material they deem necessary to comply with their document retention obligations. Class Counsel and the EEOC shall destroy or return the remaining set of documents and materials upon the expiration of its document retention obligations. During the period of time prior to destruction or return of all documents and other materials retained by Class Counsel and the EEOC, they shall continue to treat as confidential such documents and materials designated as "Confidential" during the litigation.

WE CONSENT TO AND
REQUEST THE ENTRY OF
THIS CONSENT DECREE:

Tiffany B. Klosener *(Pro Hac Vice)*
Amy L. Coopman *(Pro Hac Vice)*
W. James Foland *(Pro Hac Vice)*
FOLAND, WICKENS, EISFELDER,
ROPER & HOFER, PC
911 Main Street, 30th Floor
Kansas City, MO  64105
(816) 472-7474
(816) 472-6262 (Fax)
tklosener@fwpclaw.com
acoopman@fwpclaw.com
jfoland@fwpclaw.com

Teresa Demchak *(Pro Hac Vice)*
Morris J. Baller *(Pro Hac Vice)*
JOSEPH E. JARAMILLO *(Pro Hac Vice)*
GOLDSTEIN, DEMCHAK, BALLER
BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612-3534
(510) 763-9800
(510)835-1417 (Fax)
tdemchak@gdblegal.com
mballer@gdblegal.com
jjaramillo@gdblegal.com

KENT SPRIGGS *(Pro Hac Vice)*
SPRIGGS LAW FIRM
324 West College Avenue
Tallahassee, FL  32301
(850) 224-8700
(850) 224-8836 (Fax)
kspriggs@spriggslawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

RONALD S. COOPER
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN REAMS
Associate General Counsel

JEAN P. KAMP
Associate Regional Attorney
Chicago District Office
500 West Madison Street, Suite 2800
Chicago, Illinois 60661
phone: 312-353-7719
fax: 312-353-8555
e-mail: jean.kamp@eeoc.gov

NORA E. CURTIN
Regional Attorney
Miami District Office
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2700
Miami, Florida 33131
phone: 305-808-1789
fax: 305-808-1855
e-mail: nora.curtin@eeoc.gov

BARBARA A. SEELY
Supervisory Trial Attorney
St. Louis District Office
1222 Spruce Street, Room 8.100
St. Louis, Missouri 63103
phone: 314-539-7914
fax: 314-539-7895
e-mail: barbara.seely@eeoc.gov

ANDREA G. BARAN
Senior Trial Attorney
Kansas City Area Office
400 State Avenue, Suite 905
Kansas City, Missouri 64131
phone: 913-551-5848
fax: 913-551-6957
e-mail: andrea.baran@eeoc.gov

**ATTORNEYS FOR THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

_____

JoDee Favre
Favre Law Office, LLC
5005 West Main Street
Belleville, IL  62226
jfavre@favrelaw.com

**ATTORNEY FOR PLAINTIFF-INTERVENOR,
PEARLE PHILLIP**

Keith C. Hult
Shanthi V. Gaur
LITTLER MENDELSON
200 North LaSalle Street, Suite 2900
Chicago, IL 60601
312/372-5520
312/372-7880 (Fax)
khult@littler.com
sgaur@littler.com

Allan G. King
LITTLER MENDELSON
2001 Ross Avenue, Suite 2600, Lock Box 116
Dallas, TX 75201-2931
214/880-8100
aking@littler.com

**ATTORNEYS FOR DEFENDANT**

APPROVED.


Dated:03/24/2008

                                s/G. Patrick Murphy
                                G. PATRICK MURPHY
                                UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**EXHIBIT A**

**PLAINTIFFS' AND INDIVIDUALLY
REPRESENTED CLASS MEMBERS' RELEASE
AND WAIVER OF CLAIMS**

In consideration for the monetary enhancement and other class monetary payment I will receive under the Consent Decree, I hereby — for myself and for my heirs, representatives, attorneys, executors, administrators, successors, and assigns — release, and waive Walgreen Co. ("Walgreens") and all of its current and former affiliates, including without limitation all of its officers, directors, servants, agents, managers, employees and former employees, and its representatives and attorneys, past, present and future, and all persons acting under, by, through, or in concert with any of them (collectively, the "Releasees"), from any and all claims arising at any time up to and including the date of my signature on this Release and Waiver of Claims, including but not limited to any claims for monetary relief of any type and attorneys' fees and costs that I asserted in the <u>Tucker</u> action, or that I might have asserted, or could in the future assert under any cause of action against Walgreens arising out of my employment or application for employment with Walgreens, including but not limited to any claim under any federal, state or local statute relating to my employment relationship with Walgreens, including but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, 42 U.S.C. § 1981, as amended, and analogous provisions of State laws. This Release and Waiver of Claims shall survive the termination of the Consent Decree. However, this Release and Waiver of Claims shall not extend to claims based on incidents occurring after the date I execute this Release and Waiver of Claims or any claim that is expressly excluded under the Consent Decree.


Date: _____        _____

                                   (Name of Plaintiff or
                                   Represented Class Member)

# EXHIBIT B

## SUMMARY OF CONSENT DECREE

On July __, 2007, Walgreens, the United States Equal Employment Opportunity Commission ("EEOC") and private counsel representing fourteen current and former African American employees of Walgreens submitted a proposed Consent Decree ("Decree") to the United States District Court for the Southern District of Illinois. The Decree resolves a consolidated employment discrimination class action brought against the Company by EEOC and the private plaintiffs. The Court gave final approval of the Decree on _____, 2007. This Summary explains Walgreens' basic duties and obligations under the Decree.

## Background and Summary of the Litigation

In the lawsuit, EEOC and private plaintiffs claim that Walgreens discriminates against African American retail and pharmacy management employees by assigning them to particular stores because of their race, and by denying them promotions because of their race. The private plaintiffs also allege that Walgreens compensates African Americans in retail and pharmacy management positions less than similarly situated white employees.

Walgreens denies all of these allegations, and maintains that it has not discriminated in any way against African-American employees on the basis of race.

The Decree is intended to settle certain claims raised as part of a the lawsuit. The Decree covers all African Americans who are or were employed by Walgreens as Management Trainees ("MGTs"), Executive Assistant Managers (EXAs), Store Managers ("MGRs"), Pharmacists (RPS-'s), or Pharmacy Managers (RxMs) for any length of time between June 20, 2001 and _____, 2007 (the **Preliminary Approval Date).** The Company voluntarily entered into the Decree because it would have incurred a greater expense by continuing the litigation. Moreover, the actions Walgreens has agreed to undertake pursuant to the Decree are sound business practices that will further enhance the Company's diversity and equal employment opportunity efforts. Ken Weigand, Senior Vice President of Human Resources, will serve as the Decree Monitor, bearing primary responsibility for overseeing Walgreens' compliance with the Decree. Walgreens will provide periodic reports of its implementation of the Decree to

Monitoring Counsel (EEOC and one of the law firms representing the private plaintiffs), who also will monitor Walgreens' implementation of the Decree.

**Summary of Employment Practices Affected**

The overall objective of the Decree is to continue to ensure equal employment opportunities for African American management employees, a policy that Walgreens strongly advocates. During the term of the Decree (which is 5 years following final approval of the settlement by the Court), Walgreens will retain professional consultants to undertake a review of its decisions regarding store assignments, promotions. compensation, and internal investigation of employee discrimination complaints. Among other things, under the Decree, Walgreens will:

- not enact, maintain or implement any policy or practice that discriminates against any employee on the basis of race;
- monitor its promotions, compensation and store assignment decisions; and
- provide non-discrimination training to its employees.

**Monetary Relief**

Under the Decree, Walgreens will establish a settlement fund in the amount of $18,364,500, plus interest, to provide individual monetary awards to eligible members of the Settlement Class. A Settlement Administrator will determine the specific awards for each class member, based on a formula to which Walgreens, the private plaintiffs and the EEOC have agreed. In addition, Walgreens will pay $5,550,000 for private plaintiffs' attorneys' fees and costs and $40,000 for Plaintiff-Intervenor's attorney's fees and costs.

**Further Information**

In the coming months, you will be provided with training regarding the Company's obligations under the Consent Decree. If you have any questions in the meantime, please feel free to contact Deidra Byrd, Kim Metrick or David Metz in the Employee Relations Department.

# EXHIBIT C

## NOTICE TO ALL EMPLOYEES
## POSTED PURSUANT TO A VOLUNTARY CONSENT DECREE

This Notice is being posted pursuant to a Consent Decree entered by the Federal Court in <u>Tucker, et al. v. Walgreen Co.</u> and <u>EEOC v. Walgreen Co.</u> resolving the consolidated lawsuits brought against Walgreens by private plaintiffs and the U.S. Equal Employment Opportunity Commission (EEOC).

In the lawsuits, the plaintiffs asserted that Walgreens violated 42 U.S.C. 1981 and Title VII of the Civil Rights Act of 1964, by discriminating against African American retail and pharmacy management employees on the basis of race in promotions, compensation and assignment.  Walgreens denies that it has engaged in any policy or practice of unlawful discrimination.

To resolve the case, Walgreens, private plaintiffs and the EEOC have agreed to the following, among other things:

1.    Walgreens will provide equal employment opportunities to all store management and pharmacy employees.  Consistent with this policy, Walgreens will not discriminate against African –American store management and pharmacy employees on the basis of race in promotions, store assignments, compensation or terms and conditions of employment.

2.    In addition to making monetary payments to the Plaintiffs and Class Members, Walgreens will monitor promotions, compensation and store assignment decisions, and review its current policies and employee training programs;

3.    Walgreens will not retaliate against any person because he or she opposed discrimination on the basis of race, filed a charge of discrimination on the basis of race, or asserted any rights under the Consent Decree; and

4.    Walgreens will designate Ken Weigand, Senior Vice President of Human Resources, as internal decree monitor.  Mr. Weigand will work with representatives of the EEOC and the private plaintiffs to ensure Walgreens' compliance with the terms of the Consent Decree.

More details regarding this settlement may be obtained by reviewing a summary of the Consent Decree, which is posted on Walgreens' Employee Relations' website on the Company's intranet.  You may also obtain a complete copy of the Consent Decree by contacting the Settlement Administrator, Settlement Services, Inc., at (866) 854-7674, or <u>info@walgreensracecase.com</u>, or by requesting a copy from the Employee Relations Department at (847) 315-4455.

Walgreens' policy and federal law prohibit discrimination on the basis of race.  If you believe you have been discriminated against, you may report your concerns via the Open Door Policy to any member of management, or to Walgreens' Employee Relations Department at (847) 315-4455.  You may also contact the EEOC at (312) 353-7719 or the Class Monitors, Morris Baller and Teresa Demchak, at Goldstein, Demchak, Baller, Borgen & Dardarian (510) 763-9800, or through their website at www.gdblegal.com.  The EEOC, which will also be monitoring compliance with the Consent Decree, is responsible for enforcing federal laws prohibiting employment discrimination based on race, color, gender (including sexual harassment and pregnancy), religion, national origin, age, disability and retaliation.

**<u>This Is An Official Notice And Must Not Be Removed, Defaced Or Covered</u>**

      This notice must remain posted until at least _____ (a date five years after the Approval Date).  Questions about this Notice or compliance with its terms may be directed to:  Ken Weigand, Senior Vice President of Human Resources; the U.S. Equal Employment Opportunity Commission; or the Monitoring Counsel, at the numbers listed above.

# EXHIBIT D

# EXHIBIT D

## ENHANCEMENT PAYMENTS TO
## CLASS REPRESENTATIVES, PLAINTIFF WAFFORD,
## AND PLAINTIFF INTERVENOR PHILLIPS

| | |
|---|---|
| Avery Anderson | $18,500 |
| Leon Bradley | $27,500 |
| Traci Dansberry | $20,500 |
| Chris Dargin | $47,500 |
| Oscar Green | $37,500 |
| Jovan Haney | $18,500 |
| Mike Jackson | $22,500 |
| Angela Miller | $25,500 |
| Pearle Phillips | $52,500 |
| Kevin Riddle | $22,500 |
| William Strickland | $22,500 |
| Johnny Tucker | $48,500 |
| Kimberly Wafford | $32,500 |
| Carlos Zimmerman | $22,500 |

# EXHIBIT E

**EXHIBIT E**

**ENHANCEMENT PAYMENTS TO**
**(1) CHARGING PARTIES AND (2) CLASS MEMBERS**
**INDIVIDUALLY REPRESENTED BY CLASS COUNSEL**

| | |
|---|---|
| Charles W. Adams | $2,500 |
| Derrick Brown | $2,500 |
| Tornica Chaney | $2,500 |
| Jelani Coppage | $ 250 |
| Robert Davis | $2,500 |
| Shaneika Foster | $2,500 |
| Nichole Herron | $2,500 |
| Kathy Hoskin | $2,500 |
| Dorthea McChester | $ 250 |
| Alexandra Mwaura | $2,500 |
| Ricky G. Nicholson | $2,500 |
| Victor Oatts | $2,500 |
| LeNitra Oliver | $2,500 |
| Deborah Sanders | $2,500 |
| Rashaun Stout | $1,000 |
| Shaun Thornton | $2,500 |

# EXHIBIT F

**TUCKER v. WALGREEN CO.**
AND
**EEOC v. WALGREEN CO.**
Settlement Administration Center
Post Office Box 10523
Tallahassee FL 32302-2523
(866) 854-7674

## ESTIMATED SETTLEMENT AMOUNT FORM

**CLASS MEMBER INFORMATION**

Name/Mailing Address:

_____
Corrections

_____
Corrections

If your name or address is different from those shown above, print the corrections on the lines above.

### PLEASE PRINT CLEARLY

Daytime Telephone Number: (___) ____ - _____  Evening Telephone Number: ( ) _____ - _____

Social Security Number: _____/_____/_____

     Your estimated settlement award is a share of the class settlement based on the number of days you worked for Walgreens in one or more of the Covered Positions and one or more of the Listed Stores during the period June 20, 2001 through _____, 2007 ("Class Period"). The terms "Covered Positions" and "Listed Stores" are defined in the Notice of Settlement of Class Action [*check document title*] that you are receiving with this form.

     Walgreens' records show that, within the Class Period, you worked in the Covered Positions during the following periods:

### (Based on Walgreens' Data)

| Position | Dates of Employment |
|---|---|
| 1. Management Trainee (MGT) | _____ to _____ |
| 2. Executive Assistant Manager (EXA) | _____ to _____ |
| 3. Store Manager (MGR) | _____ to _____ |
| 4. Pharmacist (RPH) | _____ to _____ |
| 5. Pharmacy Manager (RXM) | _____ to _____ |

1

Walgreens' records also show that you worked in the following Listed Stores during the following periods:

| **Listed Store #** | **Dates of Employment** |
|---|---|
| _____ | _____ to _____ |
| _____ | _____ to _____ |

**Based on the information set out above, your estimated share of the Class Fund is $_____.** Your final actual share may vary from this amount depending on the verification of employment dates of class members in the challenge resolution process, or on opt-outs from the settlement; both processes are also described in the Notice. Unless you opt out of the settlement, a check for your share of the Class Fund will be mailed to you after the Court grants final approval of the settlement and the time for any appeal from the settlement has expired or any appeal has been resolved.

**IF ALL OF THE INFORMATION LISTED ABOVE IS CORRECT, AND YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU DO NOT NEED TO DO ANYTHING. A CHECK FOR YOUR SHARE OF THE CLASS FUND WILL BE MAILED TO YOU AFTER THE COURT GRANTS FINAL APPROVAL OF THE SETTLEMENT.**

If you have an address correction, please note it in the space provided above and return this Estimated Settlement Amount Form to the Settlement Administration Center at the address noted above. Please also enter your daytime phone number and Social Security number in the spaces provided above.

Challenge to Dates of Employment in Covered Positions or Listed Stores.

If you do not agree with the dates you worked in Covered Positions and Listed Stores, as stated above, you may challenge them by completing the following ___ sections. **You do not have to complete these statements in order to be paid the estimated share shown above.**

"Between June 20, 2001 and _____, 2007, I believe I worked the following dates in Walgreens Covered Positions":

**Dates Worked in Covered Positions (Proposed by Class Member)**

| **Covered Position** | **Dates of Employment** |
|---|---|
| _____ | _____ to _____ |
| _____ | _____ to _____ |
| _____ | _____ to _____ |

"Between June 20, 2001 and _____, 2007, I believe I worked the following dates for Walgreen's in a Listed Store":

**Dates in Listed Stores (Proposed by Class Member)**

**Listed Stores Worked In**                              **Dates of Employment**

_____          _____ to _____

_____          _____ to _____

If you claim a different number of days you worked in any of the Covered Positions, or a different number of days worked in Listed Stores in any of the Covered Positions, you must include any documentary evidence you have that supports your claim (such as pay stubs reflecting dates of such employment between June 20, 2001 and _____, 2007). A W-2 form will not be considered to be sufficient evidence of dates of employment in particular jobs or stores.

> *NOTE: If you claim a different amount of time worked in Covered Positions and/or Listed Stores, you hereby authorize the Settlement Administrator to review your Walgreens employment records and Walgreens to release those records to the Settlement Administrator for that limited purpose in order to make a determination based on your Walgreens records regarding the amount of time you worked in such positions or in such stores. **This determination may increase or decrease the amount of your settlement share. All such determinations are final and binding with no opportunity for further appeal.***

I declare under penalty of perjury under the laws of the United States that the foregoing information supplied by the undersigned is true and correct and that this Estimated Settlement Amount Form was executed on this

_____ of _____, 2007, in _____, _____.
   day          month                    city                state

_____
                                      Signature

**IF YOU HAVE CORRECTIONS OR CHALLENGE THE NUMBER OF DAYS WORKED IN COVERED POSITIONS AND/OR LISTED STORES, THIS ESTIMATED SETTLEMENT AMOUNT FORM MUST BE SIGNED AND RETURNED TO THE SETTLEMENT ADMINISTRATION CENTER AT THE ABOVE ADDRESS SO THAT IT IS *POSTMARKED* NO LATER THAN _____, 2007.**